[L. A. No. 5155. In Bank.—October 23, 1920.]

VICTOR OIL COMPANY (a Corporation), Respondent, v. C. P. DRUM et al., Defendants; GEORGE HOLMAN COFFIN, Jr., et al., Appellants.

[1] CORPORATIONS — PURCHASE OF PROPERTY FROM PROMOTERS — DISCLOSURES OF SECRET PROFITS—WHEN UNNECESSARY.—The owners of any kind of property may form a corporation with others and sell the property to the corporation at any price that may be agreed upon between them, regardless of the original cost, provided there is no fraudulent misrepresentation made by the vendors, and they are not bound to disclose the profit which they made by the transaction.

[2] ID.—SALE OF LANDS TO CORPORATION—LIABILITY OF PROMOTERS FOR SECRET PROFITS.—Where the holder of an option to purchase lands and his associates, through the medium of a corporation which they organized, induced a number of persons to associate with them for the purchase of the lands at a price greater than that called for by the option without disclosing to such persons that they were making a profit by the transaction, they were liable to the corporation for such profits.

[3] ID.—EXISTENCE OF FIDUCIARY RELATIONSHIP — DISCLOSURE OF TRANSACTION—DUTY OF PROMOTER.—Where a promoter makes a sale of lands to a corporation and realizes a profit therefrom, he

---

2. Liability of promoter of corporation for secret profits, note, 18 L. R. A. (N. S.) 1110.

3. Relation of promoter to corporation and stockholders, notes, 4 Ann. Cas. 669; 17 Ann. Cas. 269; Ann. Cas. 1915B, 176.

occupies a fiduciary relation toward the corporation and his associates in it, and the burden is upon him to show a full disclosure of the facts concerning the transaction.

[4] ID.—RECOVERY OF SECRET PROFITS—NONCONCEALMENT OF TRANSACTION FROM DIRECTORS—INSUFFICIENT DEFENSE.—In an action by a corporation against its promoters to recover secret profits made by them on a sale of lands to the corporation, the fact that the nature of the transaction was not concealed from the board of directors was no defense, where the promoters directed and controlled the corporation.

[5] ID.—PLEADING—INDUCEMENT OF OTHERS TO BECOME SUBSCRIBERS —SUFFICIENCY OF COMPLAINT.—In an action by a corporation against its promoters to recover secret profits realized by them on a sale of lands to the corporation, the failure of the complaint to allege directly that others were induced to become subscribers to the stock of the plaintiff is not a sufficient ground for reversal of the judgment, where the fact is alleged indirectly, is not in dispute, and affirmatively appears from the answers of the defendants themselves.

[6] ID.—VALUE OF PROPERTY IMMATERIAL.—In an action for the recovery of secret profits made by promoters on a sale of property to the corporation, it is wholly immaterial whether the property was or was not worth what the plaintiff paid for it, since the wrong lies in the profit that was wrongfully made, and the relief in the return of the profit to the corporation.

[7] ID.—JOINT AND SEVERAL JUDGMENT AGAINST PROMOTERS—EVIDENCE.—In an action by a corporation against the holder of an option to purchase lands and his associates to recover secret profits made by them on a sale of the lands to the corporation without disclosing their personal interest in the transaction, a joint and several judgment against all of the defendants for the full amount of the profits was proper where it appeared from the evidence that all defendants were participants in the fraud.

[8] ID.—PART PAYMENT IN STOCK—RECOVERY OF STOCK OR VALUE—RIGHT OF CORPORATION.—Where a part of the purchase price of lands sold to a corporation by its promoters at a secret profit was paid for in shares of stock, the corporation had the right to reclaim the shares or to recover their value as of the time of the wrong.

[9] ID.—JUDGMENT—WHEN NOT ESTOPPEL.—In an action by a corporation to recover secret profits made by promoters on a sale of lands to the corporation, the defendants cannot set up by way of estoppel a judgment obtained against the plaintiff and one of the defendants in an action against them by a third party, since under section 1910 of the Code of Civil Procedure a judgment may operate as an estoppel between parties to it only when they are adverse parties.

[10] ID.—STATUTE OF LIMITATIONS—DIVISION OF SHARES AMONG PRO-MOTERS—INSUFFICIENT NOTICE OF FRAUD.—Knowledge by a corporation that certain of its shares given by it to a promoter on a sale of lands by him to the corporation wherein the promoter made a secret profit had been transferred to other promoters was not sufficient to put the corporation on inquiry as to whether there had been a division of the shares pursuant to a scheme to defraud so as to bar an action for the recovery of the profits commenced more than three years thereafter.

[11] FRAUD — DISCOVERY — RULE OF COURTS. — The courts will not lightly seize upon some small circumstance to deny relief to a party plainly shown to have been actually defrauded against those who defraud him on the ground that he did not discover the fact that he had been cheated as soon as he might have done, and it is only where the party should have plainly discovered the fraud except for his own inexcusable inattention that he will be charged with a discovery in advance of actual knowledge on his part.

[12] CORPORATIONS—RECOVERY OF SECRET PROFITS — DISCOVERY OF FRAUD—PLEADING.—In an action by a corporation to recover secret profits realized by promoters on a sale of lands to the corporation, brought after the expiration of the statutory period of three years, where the complaint alleged the facts constituting the fraud showing it to be a concealed one and that defendants concealed the facts from the plaintiff, there was a sufficient allegation as to why there was no earlier discovery.

[13] ID.—CIRCUMSTANCES OF DISCOVERY.—In such an action, where the evidence makes it plain that the circumstances under which the fraud was discovered did not involve a knowledge of facts upon which the plaintiff could be charged with a discovery prior to the three-year statutory period, plaintiff's failure to plead the circumstances under which the fraud was discovered was non-prejudicial.

[14] ID.—DELAY IN COMMENCEMENT OF ACTION—LACK OF LACHES.—In such action, the plaintiff cannot be charged with laches in delaying the commencement of the action after the discovery of the fraud, where brought within the period of limitation and no prejudice was shown to have resulted from the delay.

[15] LACHES—PLEADING.—Laches *is* a *defense* and *is* not a *condition* of relief, and, if it does not appear on the face of the complaint, must be affirmatively pleaded and proven by the defendants.

APPEAL from a judgment of the Superior Court of Los Angeles County. Chas. Wellborn, Judge. Affirmed.

The facts are stated in the opinion of the court.

Edwin A. Meserve and Jefferson P. Chandler for Appellants.

Bradner W. Lee, Bordwell & Mathews, Bradner W. Lee, Jr., Kenyon F. Lee and C. E. Spencer for Respondent.

OLNEY, J.—This is an action by a corporation against four men who are alleged to have been its promoters, for the recovery of secret profits made by them on the sale of certain properties to the corporation. A joint and several judgment for thirty-two thousand five hundred dollars was rendered against the defendants, from which two of them appeal. The facts as disclosed either by the defendants' answer, evidence that is undisputed, or the findings of the trial court are these:

In the early part of 1910 there was considerable excitement in the oil business in this state, and the defendants C. P. Drum and George H. Coffin formed a plan to find some oil properties and organize a corporation to take them over. They found two properties, one belonging to the Hamilton Oil & Gas Company and the other to the California Petroleum Lands Company. On March 23, 1910, Coffin secured a written memorandum from the president and chief stockholder of the Hamilton Company which gave Drum an option to purchase that company's land. Later there was substituted for this option a formal contract of purchase and sale, with the Hamilton Company as vendor and Drum as vendee. This contract is dated March 23, 1910, the date of the option, but it certainly followed the giving of the option. Whether it followed on the same day or not does not positively appear, but there are circumstances which make it very probable that it was not executed until after the organization of the plaintiff some days later, and was then antedated to make it correspond to the date of the option. At any rate, the parties by their pleadings and counsel in their briefs all assume the fact to be that prior to the organization of the plaintiff all that Drum had in respect to the Hamilton lands was an option, and that he was not then the equitable owner of the property as vendee under a firm contract of purchase and sale.

There seems to have been only a verbal understanding at any time in regard to the purchase of the California Petroleum lands.

Immediately upon the acquisition of the Hamilton option, Coffin and Drum, with the defendants Rischel and Coffin, Jr., a son of the other Coffin, began the organization of the plaintiff, and perfected it within a few days, the articles of incorporation being acknowledged on March 26, 1910, and filed with the county clerk two days later. Neither Coffin, Sr., nor Drum appear in the articles of incorporation as organizers of the company, but that they, with their codefendants, were the actual moving and controlling parties admits of no question. Those who appear as organizers were the defendants Rischel and Coffin, Jr., and three others. The organization meeting of the corporation was held on April 7, 1910, and the five appearing as organizers were elected directors, Rischel being made president and Coffin, Jr., secretary and treasurer. At the same meeting an offer in writing by Drum was submitted and accepted, whereby Drum proposed to sell to the company the Hamilton lands for fifty-two thousand five hundred dollars and the California Petroleum lands for thirty-one thousand dollars. Of the purchase price of the Hamilton lands, forty thousand dollars was to be paid in money and twelve thousand five hundred dollars in shares of the company at twenty-five cents a share, or fifty thousand shares in all. Of the purchase price of the California Petroleum lands sixteen thousand dollars was to be paid in money and fifteen thousand dollars in shares at twenty-five cents a share, or sixty thousand shares in all.

The option and contract which Drum had for the Hamilton lands fixed the price of the lands at thirty-five thousand dollars, so that by his sale to the company he would make a profit of five thousand dollars in money and twelve thousand five hundred dollars in stock of the company at twenty-five cents a share. By the understanding which he had for the purchase of the California Petroleum lands the price of the lands was sixteen thousand dollars, so that on turning over these lands to the company he would make a profit of fifteen thousand dollars in stock of the company at twenty-five cents a share. It is these profits aggregating thirty-two

thousand five hundred dollars which are sought to be re-
covered by the plaintiff in this action.

There is no evidence that the fact that Drum was making a
profit on his sales to the company was disclosed to the
directors of the company other than the defendants Rischel
and Coffin, Jr.  On the other hand, it was not represented to
the directors that he was not doing so, and, of course, the
transaction on its face being a direct sale by Drum to the
company for a certain price not fixed, so far as appeared,
by reference to what the properties had cost him, involved
directly the possibility that he might be selling for a price
greater than the cost to him.

Along with the organization of the company, steps were
taken to secure subscriptions to its stock.  A subscription
paper was circulated stating that a corporation was being
formed to take over the two properties, describing them, at
the figures contained in the offer of sale by Drum.  The iden-
tity of the seller is not disclosed by the subscription paper,
nor is there any intimation that he is one of the organizers
of the company and will make a personal profit on the pur-
chase which the company was being formed to make.  It
appears, in fact, that this profit was not disclosed until
several years later.

When sufficient funds had been raised by the plaintiff
company, the purchases by Drum from the Hamilton and
California Petroleum Companies and the sales by him to the
plaintiff were consummated, practically simultaneously, Drum
paying for the properties out of the purchase money which
he received for them.  The profit which he made in money
he divided equally with the other three defendants.  The
stock which he received he also divided with them, though
apparently not equally.  The division of the stock was con-
cealed, at first by not having the stock transferred, and later
by having it transferred into the names of others than the
real owners.  The division of the profits is denied by the
defendants, but that the stock was actually divided is ad-
mitted, as is also the fact that Drum paid to or for the
benefit of each of the other defendants an amount in money
equal to what would have been his share on a division of the
profits.  The claim is that the stock and money were given
for services in the way of securing subscriptions and for
other considerations.  The finding of the trial court is, how-

ever, that the profits were divided as we have stated, and the evidence and the circumstances are ample to sustain that conclusion and it must be accepted as the fact.

It is also found by the court that neither the subscribers for stock of the plaintiff, other than the defendants, nor the plaintiff itself learned of the secret profits made by Drum and divided between the defendants prior to December 13, 1913, and that the action for their recovery which was commenced November 30, 1914, was brought within a reasonable time after such information was had. As we have said, judgment was given against the defendants jointly and severally for the full amount of the secret profit made by them. From the judgment the two Coffins alone appeal.

The primary question upon the foregoing facts is, Is there any cause of action against the defendants because of them? [1] It is to be noted in this connection that, as stated in *Densmore Oil Co.* v. *Densmore*, 64 Pa. St. 43, "any man or number of men, who are the owners of any kind of property, real or personal, may form a partnership or association with others, and sell the property to the association at any price that may be agreed upon between them, no matter what it may have originally cost, provided there is no fraudulent misrepresentation made by the vendors to their associates. They are not bound to disclose the profit which they made by the transaction."

It is also to be noted that the present transaction appeared on its face to be a sale by Drum, so that the directors of the plaintiff who accepted the proposition of Drum must have understood that it was at least possible, if not probable, that he would make a profit.

It is also to be noted that if it were legitimate for Drum to make a profit on the sale, the fact that he afterward divided his profit with the other defendants is wholly immaterial. If the profit were legitimately his, he had a right to do with it as he pleased.

Upon these facts the defendants seek to have applied to the present case the principle just quoted from *Densmore Oil Co.* v. *Densmore*, whose soundness cannot well be controverted, claiming that by it Drum had a right to sell to the company, and the latter was not concerned with whether he made a profit or not.

The answer to this contention is that the case is not one of a sale by the owner of property to an association organized to purchase it, in which the understanding and basis upon which the association is formed and the purchase consummated is that one of the associates is selling property to the association. In such a case the fact is manifest that the vendor has a personal interest in the sale adverse to the association, and anyone going into the enterprise would or should realize that the vendor, even though one of the association, is selling for his own advantage. [2] But in the present case the essence of the business was that the defendants through the medium of a corporation induced a number of persons to associate with them for the purchase of certain properties for prices greater than the properties could be obtained for, and without any disclosure either of that fact or of the fact that the defendants expected to harvest the difference in price, and had an interest in having the purchase made distinct from their interest in the association and adverse to the association, that in brief they would directly profit by the purchase, not as members of the association, but out of the moneys which their associates would contribute. The moral guilt in such a business, with its concealment of its real nature by those promoting the enterprise from those whom they are seeking to have join with them in it, is apparent.

That the law also will recognize the guilt and give relief because of it is well established. The defendants were promoters of the plaintiff corporation beyond question. The plaintiff was projected and organized by them, and they for some time after its organization managed and controlled it. The part they played was that of projecting and organizing a corporation to purchase certain properties, and inducing others to join with them in the enterprise. This is the essence of promotion. (Ehrich on Promoters, secs. 3, 4, 5; *Ex-Mission L. & W. Co.* v. *Flash,* 97 Cal. 610, 626, [32 Pac. 600]; *Burbank* v. *Dennis,* 101 Cal. 90, 97, [35 Pac. 444].)

The defendants being promoters, in the language of *Lomita L. & W. Co.* v. *Robinson,* 154 Cal. 36, 45, [18 L. R. A. (N. S.) 1106, 97 Pac. 10, 13], they "occupied a fiduciary relation to their cosubscribers and were bound to truthfully declare to their associates any personal interest that they had in the

matter of the purchase. Without such disclosure they could not legally profit at the expense of their associates. If they were guilty of any misrepresentation of facts or suppression of truth in relation to their personal interest in the proposed purchase, the corporation is entitled to set aside the transaction or recover compensation for any loss which it has suffered." (See, also, *California etc. Co.* v. *Walls,* 170 Cal. 285, 293, [149 Pac. 595], and authorities there cited.)

The application of the general principle so stated to just such facts as those of the present case is found in *Densmore Oil Co.* v. *Densmore, supra.* There, after the statement we have already quoted that a vendor may, without disclosure of his profit, sell property which he owns to an association formed to purchase it and of which he is a member, the court goes on to say: "The second principle is that where persons form such an association, or begin or start the project of one, *from that time,* they do not stand in a confidential relation to each other and to all others who may subsequently become members or subscribers, and it is not competent for any of them *to purchase property for the purpose of such a company and then sell it at an advance without a full disclosure of the facts."* This statement was quoted with approval by this court in *Burbank* v. *Dennis, supra,* and the italics are those found in it as so quoted. It covers literally and exactly the present case. Drum and Coffin projected and had in mind the formation of a corporation in which others would be associated with them at the time they first hit upon the lands which were subsequently sold the plaintiff. They in fact were at the time looking for lands for the purpose of such a corporation. They therefore from the beginning "stood in a confidential relation to all others who might become members or subscribers" to the corporation. Standing in this relation, "it was not competent for them to purchase property for the purpose of such a company and then sell it at an advance without a full disclosure of the facts," and yet they did so purchase and sell property without any disclosure whatever to those whom they induced to associate with them.

In *Burbank* v. *Dennis, supra,* two men, Dennis and Sanborn, associated themselves on April 20th in a project to acquire certain lands and sell them to a corporation which they would organize and induce others to become share-

holders in. They did organize such a corporation and sold to it a number of tracts, and, among others, one known as the Titus tract. With regard to its purchase, the court said (101 Cal. 98, [35 Pac. 447]): "As to the Titus tract, Sanborn was in no sense the owner of it. He had not paid a dollar toward its purchase, and had no word of writing to indicate any interest therein. It was bought with the corporation's money, and all transactions pertaining to the sale of it occurred subsequent to the said twentieth day of April. The profit of twenty-five thousand dollars, charged to the corporation upon this tract, is not justified in the law, and the corporation has been injured to that extent." We can see no possible distinction between the facts so presented and those of the one at bar. Another decision, and a very eminent one, whose facts are closely parallel is that of *In re Olympia*, decided by the English court of appeal in 2 L. R. [1898] 153, and under the name of *Gluckstein* v. *Barnes*, by the House of Lords in L. R. App. Cas. [1900] 240. For other decisions of our own involving and applying the general principle, see *Ex-Mission L. & W. Co.* v. *Flash*, 97 Cal. 610, [32 Pac. 600]; *Lomita L. & W. Co.* v. *Robinson*, 154 Cal. 36, [18 L. R. A. (N. S.) 1106, 97 Pac. 10]; *California-Calaveras M. Co.* v. *Walls*, 170 Cal. 285, [149 Pac. 595].

So far we have been discussing the general question of the defendants' liability upon the facts shown. From the conclusion that they are liable we see no escape. But there are a number of particular contentions made on behalf of the defendants which should be considered. It is claimed, for example, that the profit made by Drum was a legitimate one, since the fact that Drum was selling to the corporation was not concealed from the directors, three of whom were not parties to the scheme to make a profit, and to whom the possibility, if not the probability, that Drum was making a profit must have been evident, and there was no representation that he was not making a profit. It is also claimed that there is no evidence that the fact that Drum was to make a profit was not disclosed. [3] The answer to the latter proposition is, of course, that when once it is apparent that Drum occupied a fiduciary relation toward the corporation and his associates in it, the burden rested on him to show the full disclosure, without which the transaction was

an improper one. **[4]** As to the first proposition, the answer is, first, that there is no disclosure shown of the fact that Drum was not the owner of the properties but had merely arranged to purchase them for the purpose of turning them over to the company, and next, that until some time after the purchase from Drum was consummated the defendants controlled and directed the corporation, so that the knowledge of the directors would have been but the knowledge of defendants, and a disclosure to the directors but a disclosure to defendants. The duty of disclosure which they owed was, as stated in the quotation we have made from *Lomita L. & W. Co.* v. *Robinson,* one to those whom they were seeking to induce to join them in the enterprise. The language of the lord chancellor in *Gluckstein* v. *Barnes, supra,* regarding a similar contention is not amiss here. He said (page 247) : "My lords, I decline to discuss the question of disclosure to the company. It is too absurd to suggest that a disclosure to the parties to this transaction is a disclosure to the company of which these directors were the proper guardians and trustees. They were there by the terms of the agreement to do the work of the syndicate, that is to say, to cheat the shareholders; and this, forsooth, is to be treated as a disclosure to the company, when they were really there to hoodwink the shareholders, and so far from protecting them, were to obtain from them the money, the produce of their nefarious plans."

Now, we do not mean to infer that the three directors other than Rischel and Coffin, Jr., were there, consciously to themselves, to cheat the shareholders. But they were there for that purpose so far as the defendants were concerned, and the latter were the directing and controlling power. Any disclosure to the directors would have been futile under the circumstances, and any disclosure which, under the circumstances, would meet the requirements of the law had to be a disclosure not to the directors but to those who were asked to subscribe. The subscription agreement did not make such disclosure, and it is a fair inference that it was not made in any other manner. In any case, the burden of showing such disclosure rested on the defendants, and it was not shown.

**[5]** Another contention made on behalf of the defendants is that the complaint fails to state a cause of action. What

has already been said is a sufficient answer to this, except in one particular. The complaint does not allege directly that others were induced to become subscribers to the stock of the plaintiff. This, of course, was one of the essential elements of the fraud, and should have been directly alleged. It is alleged, however, indirectly, and this is sufficient to sustain the judgment, particularly in view of the circumstance that the fact is not in dispute and affirmatively appears from the answers of the defendants themselves.

[6] It is also claimed that the defendants are not liable because there is neither allegation nor proof that the lands purchased were not equal in value to what the company paid for them, and that, therefore, it does not appear that the plaintiff was injured by the defendants' fraud. Along the same line, it is contended that a recovery from the defendants of the secret profit made was not proper in any case; that the remedies of the plaintiff consisted in either rescinding the purchase, something that is now impossible, or in obtaining damages. The answer to both contentions is the same. It is that the wrong which the defendants committed consisted in their making a profit at the expense of their associates when they had no right to make it. It is wholly immaterial whether the property purchased was or was not worth what the association paid for it. The wrong lies, not there, but in the profit that was wrongfully made. The proper relief in such a case is to compel the return to the association of the profit so made out of it. Putting it in another way, the defendants were under the duty, if they sold to the plaintiff, of making the sale without profit, unless they disclosed that they would receive a profit. They made the sale, but they did not make the disclosure. In this situation they cannot retain the profit. It is as if made for the corporation, and must be accounted for to it. It has been repeatedly so held, and a recovery of the profit permitted, in practically every case of this character which we have previously cited. In addition to them we might also cite *Western States etc. Co.* v. *Lockwood,* 166 Cal. 185, [135 Pac. 496].

[7] It is also claimed that a joint and several judgment against the defendants for the full amount of the profits was not proper, that as against the defendants other than Drum at least, the judgment should have been only for the

share of the profit which each received. It is sufficient to say that the finding of the court, amply sustained by the evidence, is that all four defendants were participants in the fraudulent scheme to make a profit out of the organization of the plaintiff, and the sale to it of lands in excess of their real price. Being participants in the scheme, they are each and all responsible for the full amount of the injury their scheme worked upon the plaintiff. (*Lomita L. & W. Co.* v. *Robinson, supra.*) We have said that the finding that all four defendants participated in the scheme to make a profit out of the plaintiff is amply sustained by the evidence. It is quite strenuously contended to the contrary on behalf of young Coffin in particular. There is no direct evidence that he actually was aware of the scheme, and he testifies to the contrary. It also appears that he was ill from before the time of the first official meeting of the organizers of the plaintiff until after the purchases from Drum were completed. But the circumstances of his close association with the other parties, his becoming an organizer, director, and secretary and treasurer of the company, and above all, the payment to or for him of his share of the profit and his acceptance of it, are sufficient to sustain the finding that he was a party to the scheme. If any injustice is done him in this respect, the responsibility for it, so far as it rests on others than himself, rests on those who made this young man a sharer with them in their unlawful gains and gave him in other ways as well the appearance of a participant in the scheme in which those gains were had.

[8] It is claimed by the defendants that the amount of the judgment is not correct, since to the extent of twenty-seven thousand five hundred dollars, it represents not money which the defendants received as profits, but the one hundred and ten thousand shares of the plaintiff which they so received and which the court for the purposes of the judgment transmuted into money at the rate of twenty-five cents a share without any evidence, according to the claim of defendants, that they were in fact of that value. The original issue of the shares was a wrong upon the plaintiff by the defendants. The plaintiff therefore had the right either to reclaim the shares themselves or to recover their value as of the time of the wrong. (*Hayward* v. *Leeson,* 176 Mass. 323, [49 L. R. A. 725, 57 N. E. 656].) At that

time the evidence shows that the stock of the company was being subscribed and paid for at the rate of twenty-five cents a share. It also appears that the proposal of Drum which was accepted by the company and under which the shares were issued specifies that they are to be taken in payment of the purchase price which Drum is to receive, at the rate of twenty-five cents a share. This was sufficient evidence to justify the finding of the court that such was the value. (*Lehman* v. *Schmidt,* 87 Cal. 15, 22, [25 Pac. 169].)

[9] The defendants also contend that the court erred in refusing them leave to file a supplemental answer pleading a judgment against the plaintiff and Drum in an action by the Hamilton Company, wherein a number of the questions of fact involved here were, according to defendants' contention, determined adversely to the plaintiff. The only object of the supplemental answer was to set up the judgment by way of estoppel. The refusal of the court to permit this was correct, since the judgment would not have so operated. It would not so operate because it was not between the parties to this litigation. It is true that both Drum and the plaintiff were parties defendant in the action in which the judgment was rendered, but the judgment was not between them, but between them on the one side and the plaintiff in that action on the other. A judgment may operate as an estoppel between parties to it only when they are adverse parties, so that the judgment is a determination of issues between them. (Code Civ. Proc., sec. 1910; 23 Cyc. 1237.)

The final contentions of the defendants which require consideration are that the action was barred by the statute of limitations and by laches. The fraud by the defendants was consummated by May, 1910, and the action was not brought until November, 1914. The statute of limitations which applies is subdivision 4 of section 338 of the Code of Civil Procedure. It provides that an action for relief on the ground of fraud must be brought within three years of the accrual of the cause of action, but that "the cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." The question therefore is, Was the fraud discovered by the plaintiff less than three years before the action was commenced? In this connection two some-

what different points are made by the defendants. The first is that the evidence shows that the fraud was in fact discovered, in the legal sense, prior to that time, and, second, that the complaint is defective in the averments necessary to make a sufficient showing that the fraud was not so discovered.

Taking up the first point, the evidence amply sustains the finding that the plaintiff did not have actual knowledge of the fraud until December, 1913. The defendants claim, however, that it should have had such knowledge prior to that time and more than three years prior to the commencement of the action, and rely upon the well-established rule laid down in *Lady Washington etc. Co.* v. *Wood*, 113 Cal. 482, [45 Pac. 809], that discovery is different from knowledge, that where a party defrauded has received information of facts which should put him upon inquiry, and the inquiry if made would disclose the fraud, he will be charged with a discovery as of the time the inquiry would have given him knowledge. (See, also, *Bancroft* v. *Woodward*, 183 Cal. 99, [190 Pac. 445].)

[10] The circumstances which the defendants rely upon as placing the plaintiff under the duty of inquiry prior to the three-year period are that at a stockholders' meeting in April, 1911, the defendants appeared as representing by proxy the ostensible shareholders into whose names the shares received by Drum had been transferred upon their division, and that, according to the evidence for the defendants, it was stated to one or more of the directors other than the defendants that the latter were the real owners of these shares. The mere appearance of the defendants as proxies for the ostensible shareholders would, of course, mean but little. As to the information that the defendants were the real owners of the shares, it is doubtful if the plaintiff would be charged with having such information, even if it were disclosed to the then directors. The defendants were still, if not in complete control of the corporation, at least the most important factors in it, and were its managing officers. There was as yet no really free and independent board of directors. But, however this may be, information that the defendants other than Drum were then the owners of portions of the stock which Drum had originally received as a part of the purchase price of the prop-

erties sold the company certainly did not carry an implication that Drum had not improbably bought the properties for the company and then resold them to it at an advance price, and can hardly be said to carry even the implication that the other defendants had probably acquired the shares through a division by Drum. The most natural inference would be that they had purchased the shares from those whose proxies they held, but the actual transfer of the shares on the books of the company had not yet been made. Without some information which carried a direct implication or suggestion of possible fraud, the plaintiff could not be put upon inquiry. [11] The courts will not lightly seize upon some small circumstance to deny relief to a party plainly shown to have been actually defrauded against those who defrauded him on the ground, forsooth, that he did not discover the fact that he had been cheated as soon as he might have done. It is only where the party defrauded should plainly have discovered the fraud except for his own inexcusable inattention that he will be charged with a discovery in advance of actual knowledge on his part. The present case is not of that character.

[12] As to the point of pleading, the rule laid down in *Lady Washington etc. Co.* v. *Wood,* is that where an action for relief on the ground of fraud is brought after the expiration of the statutory period of three years, the complaint must show (1) when the fraud was discovered, which, of course, must be within the three-year period, (2) why it was not discovered sooner, and (3) the circumstances under which it was discovered, so that the court may determine whether or not it was in truth discovered only within the three-year period. The complaint in the present case did allege the date of discovery, and such date was within the three-year period. As to the reason why a discovery was not sooner had, the complaint alleged the facts which constituted the fraud and which showed the fraud to be a concealed one, and also that the defendants concealed the facts from the plaintiff. This was sufficient showing as to why there was no discovery sooner. It in fact comes within the exact language of the Lady Washington case, which is that "He [the pleader] must show that the acts of fraud were committed under such circumstances that he would not be presumed to have any knowledge of them—as that they were

CLXXXIV Cal.— 16

done in secret or were kept concealed." **[13]** As to the third requirement, that the circumstances of the discovery be shown, the complaint contains nothing, and it may well be that it was defective in this respect. But the evidence makes it plain that the circumstances under which it was discovered, a revelation of the facts by Drum after an investigation had been set on foot by the then officers of the plaintiff, did not involve a knowledge of facts upon which the plaintiff could be charged with a discovery prior to the three-year statutory period. The defendants were not misled by the defect of the complaint, and the situation is, therefore, one where the pleading perhaps is technically lacking, but where there is no lack in the evidence and the opposite party was not misled. In such a situation the error, if there was one, was not prejudicial and is not ground for a reversal.

**[14]** As to the defense of laches, the complaint, as we have stated, was not filed until nearly a year after the date at which it alleges a discovery was had. The defendants furthermore contend that as early as 1912 an investigation was started resulting in a report in April, 1913, disclosing facts sufficient to charge the plaintiff with a discovery as of that time. It is not necessary to consider the accuracy of this contention. If it be true, the discovery was still within the period of limitation. Mere delay in bringing an action for a time less than the period of limitation does not amount to laches. There must be also present the element that the delay has been to the prejudice of the opposite party. (*Cahill* v. *Superior Court,* 145 Cal. 42, 46, [78 Pac. 467] ; *Cohen* v. *Cohen,* 150 Cal. 99, 105, [11 Ann. Cas. 520, 88 Pac. 267].) Nothing of this sort of any substance appears in the present case, bearing in mind that we are speaking only of the delay in bringing the action after the discovery of the fraud. Furthermore, it is exceedingly doubtful if under our statute, which provides that the cause of action does not accrue until discovery of the fraud, the plaintiff has not the unqualified right to bring the action at any time within three years thereafter. It was held in *Estudillo* v. *Security Loan Co.,* 149 Cal. 556, 565, [87 Pac. 19], that the plaintiff had such right for the statutory period after the commission of the fraud, and that the doctrine of laches had no application. If his cause of action does not

accrue until discovery, it is not easy to see why he should not likewise have the full period of the statute after discovery. The distinction must be borne in mind between laches in bringing the action within the statutory period after discovery and the laches which will prevent a tolling of the statute for failure to make a discovery, when such failure is due to the laches of the plaintiff. The distinction must also be borne in mind between such a case as the present and one where relief against fraud is sought by way of rescission. There the party defrauded, as a condition of his right to rescind, must act promptly upon discovering the facts which give him the right. The present action is not one for rescission. Rather it is closely, if not completely, analogous to an action for an accounting or to recover money or property had and received by the defendants for the benefit of the plaintiff, wherein certainly no delay after the accrual of the cause of action for less than the period of limitation would bar the right to relief. [15] We might also add that laches is a defense and not a condition of relief, and, if it does not appear on the face of the complaint, must be affirmatively pleaded and proven by the defendants. (16 Cyc. 176.) In the present case there was neither pleading nor corresponding proof of any prejudice suffered by the defendants through the delay of the plaintiff in not commencing its action more promptly upon the discovery of the fraud.

There are no other points which justify discussion. Judgment affirmed.

Shaw, J., Wilbur, J., Sloane, J., Lennon, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.

All the Justices concurred.