NEBRASKA MAUSOLEUM COMPANY, APPELLANT, V. THOMAS H. MATTERS, APPELLEE.

FILED MAY 17, 1922. No. 19707.

1. **Corporations: DUTIES OF PROMOTERS.** The promoters of a corpora-tion sustain a fiduciary and confidential relation toward the corporation and toward the persons who become stockholders therein, and such promoters must act with the utmost good faith in their dealings on behalf of and with the corporation, and are not allowed to derive any advantage or profit over other stockholders without making a full and fair disclosure of what that advantage or profit is to be, and without giving an opportunity to the corporation and its stockholders to decline to grant it.

2. ———: ———. A promoter of a corporation does not perform the duty required of him, to disclose what profits he is to make in his transactions connected with and on behalf of the corporation, by making a statement, not fully disclosing the facts, but containing something which, if followed up by further investigation, would enable the inquirer to ascertain that profits were to be made, and what such profits would amount to.

3. ———: ———: **SECRET PROFITS.** Where a promoter disclosed facts which would apprise the corporation, for which he was acting, with knowledge that he was to receive what he called a "commission" for the sale of the corporate stock of the company, but did not disclose the amount of that commission, *held*, that the corporation would not be charged with knowledge that he was to receive more than what was a reasonable and customary broker's commission for making such sales; and, where it developed that he, in fact, had an agreement by which he was to receive $51,000 out of the proceeds of the sale of $150,000 in stock, *held*, that this was an agreement for a secret profit which had not been fully and fairly disclosed.

4. ———: ———: **RECOVERY OF SECRET PROFITS.** The corporation, by acquiescence, having tacitly consented that a reasonable commission should be paid for the sale of corporate stock, was entitled to recover from the promoters only what profits had been retained by them in excess of that amount.

Nebraska Mausoleum Co. v. Matters.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Reversed.*

*Bigelow, Peterson & LaViolette,* for appellant.

*Lloyd A. Magney, contra.*

Heard before DEAN, DAY, ROSE and FLANSBURG, JJ.

FLANSBURG, J.

This was an action by the plaintiff corporation to recover from defendant Matters alleged secret profits, made by him while he was acting as promoter for the said corporation. The judgment was in favor of defendant, and the plaintiff appeals.

A corporation of Iowa was the owner of certain patent rights for the erection of mausoleums, and, desiring to sell its rights for territory in Nebraska, entered into a contract with the defendant Matters, of date October 8, 1910, whereby Matters was to undertake the incorporation and organization of a Nebraska company, which it was proposed should purchase such patent rights. Defendant Matters accordingly organized the Nebraska Mausoleum Company, the plaintiff in this case, with a capital stock of $200,000. By the agreement of October 8, referred to, the Iowa company was to receive, as payment for its patent rights, corporate stock of the Nebraska company to the extent of $101,000, face value, and defendant Matters further agreed that he would, within 90 days, sell $150,000 of the stock of the Nebraska company at par. Stock of the amount of $101,000 was to be first transferred to the Iowa company for its patents and then sold by Matters for that company, and the proceeds of the remainder, $49,000, was to be paid into the treasury of the Nebraska company, to be used as working capital. The remainder of the total corporate stock, $50,000, was to be retained by the Nebraska company as treasury stock and not sold. The contract did not directly specify that the defendant Matters was to receive any compensation or promoter's profits from the Iowa company, but did contain this rather ambiguous

and indefinite declaration: "The question of commission for the sale of said stock is to be made by E. E. Little, representative of the party of the second part (the Iowa company), and the party of the first part (defendant Matters)."

The findings of the lower court were that, in the organization of the Nebraska company, an independent board of directors was elected, and that this board was not controlled by, nor did it have any secret agreement with, Mr. Matters; but that it did have full knowledge of the terms and provisions of the written contract of October 8, above mentioned, the contract having been referred to in the minutes of its meetings. Defendant Matters and the man Little had a further agreement or understanding with the Iowa company, not set out in the written agreement of October 8, nor made known to the directors or subscribers for stock in the Nebraska corporation, covering the amount of compensation to be received by them, and, although the total amount of profits to be made was not perhaps fully known to Matters in the beginning, it appears that by this agreement, as ultimately transpired, Matters was to pay to the Iowa company, from the proceeds of the sale of the $101,000 of stock, only $50,000, and that the balance was to be retained as expenses and for the services of Matters and of Little, the latter being the representative of the Iowa company and really acting as a copromoter with Matters. It appears that defendant undertook the sale of the stock and paid commissions of 10 per cent. to his agents for securing subscriptions. The trial court found that he and his copromoter Little had received in all, as compensation under the contract, a total of $30,000. Their profits had been reduced below what was contemplated by them by the fact that some of the stock subscriptions were not paid.

This suit was instituted by the Nebraska corporation to recover these profits, made by the defendant Matters, charging that he had sustained a confidential relation to the corporation, since he was acting as promoter for it,

Nebraska Mausoleum Co. v. Matters.

and that the profits so made were secret profits, he not having made a full and fair disclosure of the facts with reference thereto to the board of directors, nor to the subscribers for stock in the corporation. The defendant's answer to this contention is, since the board of directors was an independent board, not acting under defendant's influence, nor under any agreement with him, that his disclosure to the board of the contract of October 8 was a sufficient disclosure to apprise the corporation that he was to make a profit, that the only matter which was not set forth in the contract was the amount which he was to receive, and, since the directors and subscribers of stock were, or must have been, aware of this provision in the contract, they could, had they desired, have learned what the amount of his profit was to be by making inquiry.

A promoter of a corporation stands in a fiduciary or confidential relation toward the corporation, and must act with the utmost good faith in his dealings with the corporation, to the end that the corporation shall receive the greatest possible benefit that can come to it from his services. This does not mean that in a transaction, in which the corporation is interested, the promoter is precluded from making profits or from receiving compensation, but that, when the promoter has an interest which is in any way adverse to that of the corporation, it is his duty to make a full and fair disclosure of all the facts in relation thereto, so that the corporation may have an opportunity of determining whether or not it is willing that he should make the profit, or whether it should desire to decline to allow the profit to be made. Defendant, in view of his relation to the Nebraska company, does not contend that he was not required to make a full and fair disclosure to the company of his personal interests concerning it, and of the fact that he was to receive promotion fees and compensation from the Iowa company out of sales of the Nebraska company's stock, but he does contend that he has made such a disclosure as is sufficient to meet the requirements of the law.

It is very questionable whether the provisions in the contract, which declared that "the question of commission for the sale of said stock is to be made by" E. E. Little and defendant Matters, would fully apprise the board of directors of the Nebraska company of the fact that either Mr. Matters or Mr. Little was personally to receive that commission or any promotion profits. The clause in the contract states that the "question of commission" "shall be made" by these parties, which is perhaps no more than to say that the question of the amount of commission for the sale of stock shall be decided upon by these parties. Neither does this clause nor does any other express provision in the contract specifically declare that either of these parties is to receive any commission or compensation whatsoever. It is, however, fairly inferable from the contract, taken as a whole, that Mr. Matters, since he was to sell $150,000 of the corporate stock of the Nebraska company, was to receive the broker's commission which is mentioned, and that the amount of that commission was to be determined by Mr. Little, acting for the Iowa company, and Mr. Matters, acting for himself. But would the declaration in the contract that Mr. Matters was to receive a commission for the sale of this stock be any indication to the Nebraska company that he was to receive more than the usual and customary commission fees made by stock-sales agents? Certainly, in the sale of this amount of stock, it is not customary to agree that the agent shall retain $51,000 of the proceeds of such sale. The retention of that amount would not be a commission, in the ordinary sense in which the term "commission" is used, but would be a promoter's profit under the guise of a commission. The disclosure by the written contract could have been no more than a disclosure that the defendant Matters was to receive a commission for the sale of stock. The use of the term "commission," without disclosure, in this case, of the amount of that commission, was misleading. The mere use of the term tended to conceal the fact that defendant Matters was, in truth, receiving a promoter's profit. A disclosure

of a part of a set of circumstances, although the facts dis·
closed be literally true, may, when the full circumstances
are not disclosed, be sufficient to lead to a false impression,
and such deceit is as effective as actual misrepresentation.
The mere representation that Matters was to receive a com-
mission for the sale of stock was not, as we view it, a full
and fair disclosure of defendant's interest, nor of the profits
which he was to make.  Suppose, for example, a promoter
were to propose to purchase for a corporation a piece of
land at the price of $100,000, and should represent to the
corporation that the person, from whom he was to make
the purchase, was to pay him a commission for accomplish-
ing the sale.  Would not the corporation, without a dis-
closure as to the amount of the agreed commission, be en-
titled to believe that the promoter, in such case, was ex-
pecting to receive only such an ordinary and reasonable
commission as is usually and customarily paid in such real
estate transactions, and, should the corporation discover
that the land had been actually purchased from the owner
by a payment, net to him, of $50,000, and that the corpo-
ration promoter had retained the remainder of the $100,000
purchase price, as an alleged commission for making the
sale, could not the corporation complain of a secret profit
having been made?  We do not see that the principle is so
far different in this case.  In effect, the representation of
the promoter here was that he would purchase patent
rights from the Iowa company, and that the Iowa company
would receive the net proceeds of $101,000 of the corpo-
rate stock of the Nebraska company, after deducting the
reasonable cost of selling, at most, $150,000 of such stock.
Quite naturally, the Nebraska company would not have
thought it material whether the Iowa company or the Ne-
braska company itself should bear the cost of selling stock,
since it was only the reasonable and necessary cost which
must have been in contemplation.  It cannot be imagined
that the stockholders and directors in the Nebraska com-
pany would have been willing, on their own behalf, to have
entered into an agreement to pay to Mr. Matters $51,000

for the marketing of the corporate stock which he had agreed to sell. Yet the result to the Nebraska company is identically the same. The proceeds of the sale at par of $101,000 in corporate stock has, in fact, in this case, purchased patent rights which the Nebraska company was legally and equitably entitled to purchase for $50,000.

The defendant argues that the Nebraska corporation should have been upon its guard and that the directors, as prudent persons, should have used due diligence to have discovered what was meant by the term "commission," as used in the contract, and, upon inquiry, should have ascertained what the amount of that commission was to be. It is perhaps true, as between parties who are dealing with each other at arm's length, and between whom no confidential relation exists, that a declaration of facts by one to the other of circumstances which would raise a suspicion in the mind of a prudent person and cause him to investigate and learn the truth might be sufficient to charge him, as a matter of law, with constructive knowledge of such facts, where he was negligent and did not make the investigation; but, as we understand it, that rule does not obtain in transactions between parties where the party making the representation sustains a fiduciary or confidential relation toward the other. 26 C. J. 1136, sec. 56, 1158, sec. 72; 14 C. J. 292, sec. 341.

The defendant relies upon the case of *Milwaukee Cold Storage Co. v. Dexter*, 99 Wis. 214. In that case it was held, where a defendant had purchased real estate and organized a corporation, not thought of when he made the purchase, for the purpose of taking the property off his hands at a price known to the other subscribers of the corporation, that the corporation could not complain that he had charged more than he had paid for it. The court pointed out in that case that the defendant had not purchased the property for or on behalf of the corporation, nor at a time when he was acting as its trustee, and stated that the case would have been different had he, while acting as a promoter, purchased the land and resold it to the

corporation at a profit. That case, as we view it, goes no further than to hold that a person who owns property, not bought as an agent of the corporation, may sell it to the corporation at whatever price he fixes and without regard to the price he paid for it, so long as there is no misrepresentation, and so long as the board of directors, that deals with him, is independent and does not act in collusion with him. Not being a trustee in the holding of the property, no duty would devolve upon him to disclose what he had paid for the property when he acquired it. *Victor Oil Co. v. Drum,* 184 Cal. 226.

Another case relied upon by the defendant, and which we believe brings out the distinction in the Wisconsin case, above discussed, is the case of *Lomita Land & Water Co. v. Robinson,* 154 Cal. 36. In that case a person, who had owned property prior to the organization of a corporation, sold his property to the corporation after it was organized, and at a price greater than what he had paid. The court in that case stated that the defendant had not known of any intention to form a corporation, and had entered into an agreement to sell to the promoters of the corporation before the corporation was, in fact, organized. He was not a promoter and had no connection with the organization except to become a subscriber, later, of one share of stock. The court held that he had a right to sell to the corporation without disclosing what the land originally cost him. In that case also it was shown that, after this defendant had sold his property to the promoters and had subscribed for one share of stock in the corporation, these promoters resold the property to the corporation at an advanced price and kept the difference as a profit. This was known to the defendant, although he did not share in the profit, and the court held that the defendant, by his failure to disclose that the promoters were selling the property to the corporation at a price in advance of what he had sold it for to them, and because of his connection in the transaction, aided and abetted the promoters in making the secret profit and was jointly liable with them.

Another case relied upon by defendant is *Advance Realty Co. v. Nichols,* 126 Minn. 267. In that case the promoters purchased for the corporation certain lots at the known price of $85,000, and it was made known to the corporation that these promoters were to receive a commission from the vendor for accomplishing a sale to the corporation, but it was not made known to the corporation what amount the commission was to be. It was contended that, since the promoters had not disclosed the amount of the commission, they had not made a full and fair disclosure, and, therefore, could not retain the commission as a profit. The court, however, said that, having knowledge that the promoters were to receive a commission, the corporation could not act in disregard thereto and allege ignorance of details as a ground for action for fraud. The amount of the commission paid in that case was $5,000, and the court especially emphasized the fact that the "reasonableness of the commission received by defendants for the sale of the lots" was not involved in the case. In that case, a disclosure, that the promoters were to receive a commission, was a disclosure that they were to receive what would constitute a reasonable commission, and, since it was not questioned but that the $5,000 was a reasonable commission for selling an $85,000 piece of property, it could not be said that the corporation had been deceived by any concealment of facts.

It was the duty of the defendant in this case to make a full and fair disclosure of the profits which he was to make. He not only failed to make a full disclosure, but, if the provision of the contract regarding a commission can be taken as a representation that he was to receive a commission for the sale of stock, then that was a representation which was positively misleading.

In the transactions carried on for a corporation by a promoter, where he has an interest and derives a profit, it is not sufficient that he make such a disclosure of facts as would merely require an ordinarily prudent person to investigate and discover what the interest or profit of the

promoter is, but nothing short of such a disclosure as will give actual knowledge to the corporation will suffice. The burden of furnishing that information cannot be shifted from the promoter to the corporation. It is always the promoter's duty to disclose such facts, and not the duty of the corporation to investigate and discover them. The corporation has a right to place full confidence in its promoter, as in a trustee, and to presume that he is to make no profit which is not clearly and fully disclosed. Actual, as distinguished from constructive, notice must be brought home to the corporation and to the stockholders. *Mason v. Carrothers*, 105 Me. 392; *Arnold v. Searing*, 73 N. J. Eq. 262; *In re Olympia*, 2 Ch. Div. 1898 (Eng.) 153; *Wills v. Nehalem Coal Co.*, 52 Or. 70; 14 C. J. 294, sec. 344.

It is our conclusion, then, that the plaintiff is entitled to recover from the defendant the $30,000 profits so found by the trial court to have been realized, except, however, that certain deductions should be made.

It was known to the plaintiff corporation that a reasonable commission was to be allowed for the sale of the $150,-000 of stock. To that extent the corporation, it may be said, has given its consent, and to that extent the profits made were not secret. Where promoters are required to account for secret profits, they are, as a rule, entitled to recover expenses reasonably incurred in behalf of the corporation, except where the services or expenses are peculiarly connected with their fraud (14 C. J. 303, sec. 362; *Mason v. Carrothers, supra*), and where the corporation has offered to pay reasonable commissions, such an amount may be recovered, though an attempt may have been made to make a secret profit (*Bagnall v. Carlton*, 6 Ch. Div. (Eng.) 371).

The deductions to be made in favor of the defendant for services and expenses, furnished in accomplishing the sale of the Nebraska company's stock, should be limited to what would constitute a reasonable, usual and customary broker's commission for accomplishing stock sales. The plaintiff corporation had no knowledge that more than

that was to be paid. So far as known to it, defendant Matters might have been personally able to procure subscriptions and place the stock, and with only reasonable or even slight effort to himself. "The flattering promises contained in the prospectus which seemed to fairly promise a profit of 85 per cent. on all business transacted," as such promises were described by the trial court, would lead credulous persons to believe the stock would be quite easily salable, as in fact it proved to be.

Just what the amount of those deductions should be is a question of fact, to be ascertained and determined upon a further hearing. The judgment of the lower court is therefore reversed and the cause remanded for such trial and proceedings as are necessary to determine that question, and for entering judgment in accordance therewith.

REVERSED.