[Civ. No. 29887.   Second Dist., Div. Four.   Mar. 23, 1967.]

TOPANGA CORPORATION, Plaintiff and Appellant, v. PHILLIP J. GENTILE et al., Defendants and Appellants; ERNEST R. BREAULT et al., Plaintiffs and Respondents; ANNALEE WALKER et al., Defendants and Respondents.

Lemaire & Mohi, Cy H. Lemaire and Frank C. Morales for Plaintiff and Appellant and Plaintiffs and Respondents.

Norman Schwartz and Jack Altman for Defendants and Appellants.

No appearance for Defendants and Respondents.

JEFFERSON, J.—Plaintiff Topanga Corporation brought an action against defendants Phillip and Maria Gentile, husband and wife, seeking a determination and declaration of the respective share interests of its stockholders, or in the alternative for rescission or reformation of such interests; to cancel a void issuance of shares because of the alleged fraud of defendants; and for punitive damages against defendants by reason of said fraud. The individual shareholders of the plaintiff corporation were joined in the action either as plaintiffs or as defendants (under Code Civ. Proc., § 382).

An earlier trial of the same case, decided in defendants' favor solely on the defense of *res judicata*—the trial court having determined that the plaintiff corporation was bound by a judgment in a separate action, brought by the original shareholders, wherein they recovered a judgment against defendants based on the same fraudulent acts—was reversed on appeal in *Topanga Corp.* v. *Gentile,* 219 Cal.App.2d 274 [33 Cal.Rptr. 56]. The appellate court held that plaintiff corporation was neither a party nor in privity with a party to that shareholder's action and was not barred or collaterally estopped by that case to bring the present action. That appeal is now final.

The case was remanded to the trial court and retried by the court sitting without a jury. A judgment was rendered in favor of the plaintiff corporation, the court ordering that the shares of stock (then held in escrow by the Commissioner of Corporations) be returned to plaintiff and cancelled and new shares issued in proportion to the relative contribution of the various stockholders of plaintiff, the defendants Gentile to receive shares equivalent to a $10,000 contribution (defendants had a much higher share interest). The court awarded no punitive damages. Both plaintiff corporation and defendants appeal from the judgment, plaintiff's appeal being solely from the trial court's denial of exemplary damages.

This evidence was adduced at the trial: During the latter part of 1954 Ernest Breault was told by defendant Phillip Gentile that he (Gentile) knew of a parcel of land available to purchase which would be suitable for a dump site (hereafter referred to as the Topanga Ranch). Breault indicated that he

would be interested. In a later conversation, Gentile stated to Breault and Henry Luft that, since they did not have sufficient funds themselves to buy the property, a corporation could be formed to make the purchase. Breault and Luft agreed that they would have to find additional investors.

Since Gentile had had previous meetings with the owners of the Topanga Ranch it was agreed that he would conduct the negotiations and in his own name. He would do so, however, on behalf of the corporation which was to be promoted by himself, Breault, Luft and any other persons they could interest in taking part.

A few days later Gentile told Breault that the owners of the Topanga Ranch had indicated the purchase price for the property was $210,000. Gentile stated that he would contribute a ranch in Fresno worth $70,000 for a third interest in the corporation. The ranch would be exchanged as part of the purchase price. There was a down payment required of $100,000; the ranch would constitute $70,000 of it, leaving a $30,000 cash balance which Breault and Luft would put up with the help of any additional investors they could locate.

An escrow was opened on January 4, 1955, between the Gentiles and the sellers of the property, Jack Ingram and his wife.

The escrow agreement (plaintiffs' Exhibit 1) provided that the purchase price of the Topanga Ranch was $150,000, payable $10,000 in an exchange (the Fresno ranch), $30,000 in cash and a promissory note secured by a deed of trust for $110,000.

At about the time the escrow opened Gentile told Breault that $2,000 was required as earnest money and that he would advance $1,000 of it if Breault would do likewise. After giving him the $1,000, on February 14, 1955, Breault was approached by Gentile who requested the return of the amount he had advanced for the corporation. Whereupon, Breault gave Gentile $1,000 and received from Gentile a signed receipt (plaintiffs' Exhibit 10) acknowledging receipt of one thousand dollars ''which is return of money advanced to Topanga Corporation to secure property.''

On February 14, 1955, a document entitled ''Pre-incorporation Agreement'' (plaintiffs' Exhibit 11) was executed by Gentile, Luft, Breault, John Walker and Philip Hohnstein. The agreement reflected a purchase price of $210,000 for the Topanga Ranch and recited that Gentile would contribute his Fresno ranch as part of the purchase price in return for a one-

third paid up interest in the corporation to be formed. Gentile represented to the persons present when the agreement was executed that the purchase price was $210,000; the down payment was $30,000 cash plus the $70,000 value for his Fresno ranch—which he represented he then owned.

The $30,000 cash down payment was given to Gentile to place in the Ingram-Gentile escrow. The plaintiff corporation was formed on March 9, 1955. The escrow closed on June 10, 1955, and a deed from the Ingrams to the Gentiles was recorded on that date. On June 13, 1955, the Gentiles deeded the property to the plaintiff corporation. The balance of $110,000 due on the purchase price of the property was subsequently paid in monthly installments by the plaintiff corporation, the money coming from voluntary assessments on the various stockholders.

The deed from the Ingrams to the Gentiles (plaintiffs' Exhibit 2), contains revenue stamps reflecting a consideration of $150,000 paid for the Topanga Ranch. The deed from the Gentiles to the plaintiff corporation (plaintiffs' Exhibit 3) contains no revenue stamps.

Gentile testified at the trial that he did not own the Fresno ranch at the time he was negotiating with the Ingrams for the purchase of the Topanga Ranch. He acquired the property by a deed (plaintiffs' Exhibit 9) dated May 10, 1955.

The deposition of John Ingram was offered and received (pursuant to Code Civ. Proc., § 2016, subd. (d) (3) ). Ingram testified that he was asking $150,000 for the Topanga Ranch when he was first approached by Gentile early in 1954. Gentile told Ingram he wanted to exchange his Fresno ranch, at a value of $50,000, as part of the purchase price, and asked Ingram to go with him to Fresno to look at the ranch. When Ingram got out of the car after arriving there, he told Gentile the trip was wasted; he would not give $10,000 for the property. While he was there he obtained appraisals of the property; the lowest appraisal was $9,000 and the highest was $13,000. Gentile kept after him to sell the Topanga Ranch and Ingram finally relented and told Gentile he would give $10,000 for the Fresno property in an exchange. Gentile agreed and the sale was consummated for $150,000 allowing Gentile $10,000 for the Fresno land.

Edward Powell, a certified public accountant, became the auditor and bookkeeper of the plaintiff corporation after it was incorporated. He was approached by Breault in March of 1955 and asked to join the corporation when it was formed.

He agreed, subsequently subscribed to stock of the corporation and became one of its directors.

Powell noted that the books of the corporation first reflected the original contribution of Phillip Gentile and his wife for paid-up stock issued to them as $70,000. This interest was subsequently reduced, at a board of directors meeting on September 8, 1956, to $20,000 based on a letter the directors received from a realty company in Fresno. A notice of rescission of the stock issued to the Gentiles was subsequently sent to them with an offer to restore $20,000 worth of shares, or whatever a court would deem proper, for the Fresno ranch.

Powell was not aware however, until February 1959, after reading the deposition of Ingram, that the Fresno land was actually exchanged by Gentile for a consideration of only $10,000. On cross-examination he had indicated that, while prior to that time, he had seen the Gentile-Ingram escrow statement which reflected a $10,000 valuation on the property, he was told the $10,000 figure was used by both Ingram and Gentile as a matter of income tax benefit; he did not question this.

Along with the Gentiles, Ernest Breault and Henry Luft, Edward Powell, H. A. Jappe, John Walker (predecessor in interest to Annalee Walker), L. Mick and Philip Hohnstein, were the promoters of and became the original shareholders of plaintiff corporation.

Defendants contend the Topanga Corporation failed to establish a cause of action against them. They argue that no fraud was shown to have been committed against the corporation; that the only possible injured parties were the individual promoters and only they could sue.

The evidence shows that the Topanga Ranch was purchased on behalf of the plaintiff corporation. The Gentiles took title in their names but for the corporation to be formed. When the escrow was opened the Gentiles, Breault and Luft were the only promoters of the corporation. They agreed amongst themselves that the corporation would purchase the property. Each investor would receive stock in the corporation in proportion to his investment which would go to pay for the property. They contemplated that additional investors would be required. Gentile agreed to contribute the Fresno property which he falsely represented he then owned and falsely represented was worth $70,000. He stated that the sellers of the Topanga Ranch would allow $70,000 for it as part of the

exchange. This was false. In fact, the Gentiles' investment only accounted for $10,000 of the purchase price.

■ Well established is the principle that promoters of a corporation formed for the express purpose of purchasing a particular piece of property occupy a fiduciary relation to their co-subscribers, requiring that they truthfully disclose to their associates any personal interest they may have in the matter of the purchase. ■ Without such disclosure they may not legally profit at the expense of their associates; and if they were guilty of any misrepresentations of fact or suppression of truth in relation to their personal interest in the property, the corporation is entitled to set aside the transaction, or recover damages for any loss it has suffered. (*Lomita Land & Water Co.* v. *Robinson,* 154 Cal. 36, 45 [97 P. 10, 18 L.R.A. N.S. 1106]; *California-Calaveras Mining Co.* v. *Walls,* 170 Cal. 285, 293 [149 P. 595]; *Victor Oil Co.* v. *Drum,* 184 Cal. 226, 233-234 [193 P. 243].) ■ The corporation may reclaim shares issued to promoters as part of the wrongful transaction. (*Victor Oil Co.* v. *Drum, supra,* 184 Cal. 226, 238.)

■ The rule that the corporation has no cause of action where all of its capital stock is originally issued to, and at the time of the transaction complained of, held by promoters who assented to the transaction with an awareness of all the facts and with no intention of inviting others to subscribe in the future, has no application under the facts of this case. As the rule indicates, it does not apply where, as here, some members of the promotional group had no knowledge of the fraud or secret profits derived by other members, or where, as here, other subscribers were contemplated. Under either circumstance the corporation may recover for the wrong. (*Davis* v. *Las Ovas Co.,* 227 U.S. 80 [57 L.Ed. 426, 33 S.Ct. 197]; and see annotation in 85 A.L.R. p. 1262.)

Defendants suggest that to allow the judgment in this case to stand would be permitting double recovery by the individual shareholders against defendants for the same wrong; that since the judgment in effect benefits the shareholders and not the corporation, defendants should be entitled to assert the defense of *res judicata* in spite of the decision to the contrary in *Topanga Corp.* v. *Gentile, supra,* 219 Cal.App.2d 274.

■ As heretofore pointed out, the court in that appeal decided the *res judicata* issue contrary to defendants' position. The judgment in that action is final, thus disposing of the issue as it is now the law of the case. The argument that a

double recovery has resulted is totally without merit. In the former action the court in effect ordered a reduction of defendants' share interest and a corresponding increase in the interest of three of the promoters (Breault, Walker and Powell), on the basis that defendants' contribution was $10,000 rather than $70,000. Under the judgment which is the subject of this appeal, the entire original issue of stock in the Topanga Corporation is cancelled with a reissuance ordered on this same basis.

■ Defendants maintain that the corporation was guilty of laches in not prosecuting this action within a reasonable time after it had knowledge of the facts. No statute of limitation ran upon any cause of action in this case. There can be no laches when the action is brought within the period of the statute of limitations unless a showing is made that the delay operated to the injury of the defendant. (*Burns* v. *Ross,* 190 Cal. 269 [212 P. 17].) No showing is made that defendants were prejudiced in any way by the delay in bringing this action. ■ Nor could the doctrine of laches have application since a defendant is not permitted to complain in equity about a plaintiff's failure to discover promptly a fraud committed against him where the plaintiff's lack of knowledge is the result of the defendant's success in concealing it. (*Maybry* v. *Randolph,* 7 Cal.App. 421 [94 P. 403].)

■ It is asserted that section 1112 of the Corporations Code is applicable; that under this section the valuation of $20,000 placed by the board of directors on the Fresno property, at its September 8, 1956, meeting, was conclusive. Section 1112 provides: ''The board of directors shall state by resolution its determination of the fair value to the corporation in monetary terms of any consideration other than money for which shares with or without par value are issued. *In the absence of fraud in making the determination of value, it shall be conclusive.*'' (Italics added.) But here there was a fraud present. There was substantial evidence (in the form of the testimony of Powell) that, at the time of the September 8, 1956, meeting, the true extent of the fraud was not known by the plaintiff corporation; it did not come to light until the taking of Ingram's deposition long after the $20,000 valuation was made.

Defendants contend that the testimony of Ingram read from his deposition was improperly admitted into evidence. The issue raised is whether a proper foundation was presented

to permit its introduction pursuant to Code of Civil Procedure section 2016, subdivision (d)(3.

■ The foundation for the introduction of the deposition was laid by Cy H. Lemaire (a co-counsel for plaintiffs). He testified that he was told by Mr. Breault that Ingram was in Grants Pass, Oregon; he called the long distance operator for that city and asked for Ingram's phone number; he received an address and a number listed to John S. Ingram and called the number several times without response; he telephoned Mrs. Ingram, who is separated from her husband, and she verified the address given by the telephone operator as being Ingram's address in Grants Pass; before the pretrial conference he again called the number given but was unable to reach Ingram; he also was given the same Grants Pass address by the caretaker of the Topanga Ranch, one Herb Bennett. Lemaire further testified that before the previous trial of the case he had obtained a medical report in regard to Ingram stating that he suffered from a severe case of arteriosclerosis and could not withstand the rigors of testifying at a trial; when he talked with Mrs. Ingram she said his health was presently worse.

The admissibility of the deposition was a matter within the discretion of the trial court. (*Jordan* v. *Warnke*, 205 Cal.App. 2d 621, 630-631 [23 Cal.Rptr. 300].) Code of Civil Procedure section 2016, subdivision (d) (3), provides for the introduction of a deposition where the court finds ". . . that the witness is at a greater distance than 150 miles from the place of trial or hearing, or is out of the State . . . or . . . that the witness is unable to attend or testify because of age, sickness, infirmity, or imprisonment. . . ." The record indicates an ample foundation for the introduction of the deposition. No abuse of discretion is shown.

■ Defendants belatedly complain because the deposition was unsigned. They did not object to its introduction on this ground at the trial. The point may not be raised now for the first time. Furthermore, defendants stipulated at the time the deposition was taken that it could be used at the trial.

The final issue presented concerns the cross appeal of the plaintiff corporation from the court's denial of exemplary damages.

In this connection Mr. Powell had testified that approximately $21,900 had been spent for attorney fees by plaintiff corporation (exclusive of instant trial) as the result of the dispute over the sharehold interest of the Gentiles; that as an

additional expense incurred as a direct result of the fraud of Gentile, he himself, as an officer of plaintiff, had expended close to 1,200 hours of his time for which the plaintiff corporation was required to compensate him.

Plaintiff contends that the trial court concluded that there was no basis upon which to grant punitive damages, not because the facts did not warrant it—which point it never reached—but because it had no authority to grant such damages regardless of the fraud of Gentile. In its memorandum decision the trial court stated: "Although the defendant Phillip Gentile, has put the corporation to a tremendous expense and his action has been fraudulent, there does not seem to be any authority to grant either punitive damages or attorney fees." Similar statements are found in the findings of fact and conclusions of law filed in the action.

Section 3294 of the Civil Code provides as follows: "In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."

As the court said in *Bate* v. *Marsteller,* 232 Cal.App. 2d 605, 620 [43 Cal.Rptr. 149], "Exemplary damages are proper in cases involving fraud and are awarded to discourage the same by way of punishing the wrongdoer. [Citations.]" (See also *Ward* v. *Taggart,* 51 Cal.2d 736, 743 [336 P.2d 534].)

Defendants argue that exemplary damages are not recoverable because plaintiff was not granted compensatory damages. However, the fact that plaintiffs were not given a grant of monetary damages of a certain amount is not determinative. Plaintiff was indeed damaged by defendants' fraud for defendants had, as the result of the fraud, received stock in an amount not commensurate with the value of their contribution to the corporation. To remedy this, the trial court in effect ordered defendants to surrender that part of their sharehold interest which exceeded their true capital contribution.

The requirement of "actual damages" imposed by section 3294 is simply the requirement that a tortious act be proven if punitive damages are to be assessed. "The rule that exemplary damages cannot be imposed unless the plaintiff has suffered actual damages [citations] is based on the principle that the defendant must have committed a tortious act before exemplary damages can be assessed." (*Brewer* v. *Second Bap-*

*tist Church,* 32 Cal.2d 791, 801-802 [197 P.2d 713].) The requirement was met here.

Since plaintiff was deprived of its right to have a determination of the issue *on its merits,* the case must be remanded for such determination.

The judgment is affirmed in all respects except as to the court's finding on the issue of punitive damages; the case is remanded to the trial court solely for the purpose of rehearing and redetermining whether plaintiff should recover exemplary damages and, if so, the amount thereof.

Files, P. J., and Kingsley, J., concurred.