[L. A. No. 5309. Department One.—June 4, 1920.]

## PAUL BANCROFT et al., Appellants, v. HENRY T. WOODWARD, Respondent.

[1] FRAUD — INEFFECTUAL DISAFFIRMANCE — SUBSEQUENT ACTION FOR DAMAGES.—While it is true that a party induced to enter into a transaction by fraud, affirms the transaction when he brings an action for damages and because of the affirmance loses any right to disaffirm subsequently, it is not true that if he seeks to disaffirm, but ineffectually, he loses the right thereafter to maintain an action for damages.

[2] ID.—ACTION FOR RENTS—FRAUD IN EXECUTION OF LEASE—DAMAGES OR RESCISSION.—In an action to recover rents under a lease, the defendant may, in addition to his answer alleging that he was induced to execute the lease by fraud, claim by counterclaim and by cross-complaint filed at the same time that he is entitled either to damages or rescission, and that if he cannot have the latter that he have the former.

[3] ID. — ASSIGNMENT OF ACCRUING RENTALS — RESCISSION — LOSS OF RIGHT.—Where a lessee who was induced to execute a lease by fraud makes an assignment of accruing rentals to his wife before the commencement of an action by the lessor for the rents, he alone cannot seek rescission of the lease in such action.

[4] ID.—MISREPRESENTATION AS TO EXISTING LEASE ON PART OF DEMISED PREMISES—INSUFFICIENT GROUND FOR RESCISSION.—A lessee has not the right to rescind a lease on the ground that its execution was induced by a false representation as to the length of term of a previously existing lease on a part of the premises which prevented the lessee from constructing a building, where the negotiations for the building involved the lessor's consent to a new and different lease.

[5] ID.—DELAY IN RESCISSION—LOSS OF RIGHT.—The right of a lessee to rescind a lease on the ground that its execution was induced by fraud is lost where no endeavor to rescind was made until two and one-half years after the discovery of the fraud, although the lessee was not aware of his right to rescind until just prior to the time of his attempted rescission.

[6] ID.—DISCOVERY OF FRAUD—DILIGENCE.—Where a party has knowledge of facts of a character which would reasonably put him upon inquiry and such inquiry, if pursued, would have led to a discovery of the fraud or other ground for rescission, he will be charged with having discovered the fraud or other ground as of the time he should have discovered it, that is, as of the time when he would have discovered it if he had with reasonable diligence pursued the inquiry when he should have done so.

[7] RESCISSION—KNOWLEDGE · OF RIGHT TO RESCIND—TIME.—The rule as to the time as of which a person seeking rescission will be charged with knowledge of his right is the same as it is in regard to the time as of which he will be charged with a discovery of the facts which give him the right.

[8] ID.—UNREASONABLE LAPSE OF TIME.—In the absence of any explanation, the permitting of two and one-half years after the discovery of the fraud entitling one to rescind to elapse before becoming aware of the legal right to rescind is wholly unreasonable.

[9] ID.—CONDUCT · OF LESSEE SUBSEQUENT TO DISCOVERY OF FRAUD—LOSS OF RIGHT OF RESCISSION.—The right of a lessee to rescind a lease for fraudulent representations in procuring its execution is lost where after discovery of the facts the lessee dealt with the property as if the lease was still in effect, making subleases and collecting rents, since such conduct was an unequivocal affirmance of the lease.

APPEAL from a judgment of the Superior Court of San Diego County. Wm. A. Sloane, Judge. Reversed.

The facts are stated in the opinion of the court.

Haines & Haines for Appellants.

Wright & McKee for Respondent.

OLNEY, J.—The plaintiffs brought an action to recover certain installments of rent due them from the defendant according to the terms of a lease between the parties. The defendant answered, denying certain of the allegations of the complaint and, in addition, alleging that he had been induced to execute the lease through a certain fraudulent misrepresentation by one of the plaintiffs. He also, in his answer, set up by way of counterclaim the same fraud and his damage thereby in a very considerable amount. He also filed at the same time a cross-complaint in which he sought a rescission of the lease by reason of the same fraud. The plaintiffs answered the cross-complaint and upon the issues presented by it and the answer to it, the cause went to trial, a trial of the issues presented by the original complaint and the defendant's answer being postponed. The trial resulted in a judgment for the defendant declaring the lease rescinded, and the plaintiffs appeal.

It is well, before proceeding with a further statement of the facts, to dispose of a contention of the appellants based on the facts already stated. It is urged on their behalf that a person induced by fraud to enter into a contract has his option, upon the discovery of the fraud, either to allow the contract to stand and obtain relief in damages for the wrong inflicted upon him, or to disaffirm the contract and obtain what relief is necessary to restore him to his original position, but that he cannot both recover damages and be restored to *statu quo;* that the right of a party defrauded to disaffirm the contract and be restored to his original position is one which must be affirmatively exercised and consistently maintained, and which is lost if he takes a position inconsistent with it, as where he brings an action for damages. From these propositions as a premise, the conclusion is argued that the defendant here cannot at the same time seek the relief of damages by way of counterclaim and claim rescission by way of his cross-complaint, and that because he does ask for damages he cannot have rescission.

[1] We may grant the premise, but the conclusion does not follow. While it is true that a party induced to enter into a transaction by fraud, affirms the transaction when he brings an action for damages and because of the affirmance loses any right to disaffirm subsequently (*Stuart* v.

*Hayden,* 169 U. S. 1, [42 L. Ed. 639, 18 Sup. Ct. Rep. 274, see, also, Rose's U. S. Notes]), it is not true that if he seeks to disaffirm, but ineffectually, he loses the right thereafter to maintain an action for damages. The right to damages exists unless and until the transaction is effectually disaffirmed. It could hardly be questioned, for example, that under a complaint which, by proper and sufficient averments set out that the plaintiff had been induced by fraud to enter into a contract and had endeavored to rescind it because of such fraud, and prayed relief upon the basis of a rescission, the plaintiff might be accorded damages in case the fraud were found but under such circumstances that the right of rescission did not exist. To put the matter in another way, it is wholly inconsistent for a party defrauded to ask for damages first and a rescission if he cannot have them. **[2]** But there is nothing inconsistent in his asking for rescission first and damages if he cannot have it. The defendant here by his counterclaim and cross-complaint filed at the same time has gone no further than to say that he is entitled either to damages or to rescission, and that if he cannot have the latter he asks the former. There is nothing in this that constitutes an affirmance so that his right to rescission is gone. Upon this point the case comes directly within the rulings of *Glover* v. *Radford,* 120 Mich. 542, [79 N. W. 803], and *Richardson* v. *Lowe,* 149 Fed. 625, [79 C. C. A. 317].

Passing now to the further facts, much of what we are about to state is not in dispute. As to some of the facts, however, this is not true, and wherever it is not we have taken either the facts as found by the court or the defendant's own testimony upon which his case almost entirely depends. It appears that the plaintiffs were and are the owners of an entire block in the business district of San Diego, which, on October 7, 1912, they leased as a whole to the defendant for a period of ninety-nine years, commencing the 1st of the following January, 1913. It is this lease for whose rentals the plaintiffs sued and whose rescission is sought by the defendant. The block was occupied by a number of different buildings leased, in whole or in part, to various tenants for various periods. The lease to the defendant, which we may call the ground lease, provided that it was subject to existing leases and that the

lessee should have the rents accruing from them after the commencement of his term and should himself have the right to make leases. The negotiations for the lease were carried on by the defendant mainly with one of the plaintiffs, and during the negotiations this plaintiff handed the defendant a bundle of papers and told him that it contained all of the outstanding leases when, in fact, it did not contain one to a Mrs. Kinney, of which the defendant remained ignorant until after he had taken possession under his lease. The Kinney lease was of the upper floor of a two-story building occupying one-eighth of the block at the northwest corner. The floor leased was used as a rooming-house. Mrs. Kinney was in possession at the time but under another lease, of which the defendant was informed and which expired December 31, 1913. The lease complained of was an extension of this at an increased rental for three years, expiring December 31, 1916. Complaint is not made by the defendant as to the rental called for by the latter lease, but solely as to the length of its term. The lease to the defendant contemplated, and, in fact required, that the defendant erect new buildings on the property, and this was a feature of the negotiations between him and the plaintiffs. His complaint is that because of the length of the term of the Kinney lease, negotiations which he had under way for financing the improving of the property failed and he was unable to improve it as he desired.

The defendant's agent discovered the existence of the second Kinney lease almost immediately on taking charge of the property, and the defendant himself learned of it by the 1st of the following April, three months after the commencement of his term. He immediately complained to the plaintiff who had made the representation as to existing leases, who stated that he had forgotten about the extension, and would do all he could to get Mrs. Kinney out by the end of 1913, when the defendant had expected to be free to take possession. Nothing more occurred concerning the matter until some months later, and still in 1913, the defendant spoke to the plaintiff again about it. The plaintiff then told him that the lease to Mrs. Kinney was good and he was unable to put her out, and expressed regret and assured the defendant he would do all he could

to rectify the mistake, presumably in the way of making some allowance to the defendant.

In the meantime the defendant had been going ahead with his negotiations for financing the construction of new buildings or, rather, a new building. The ground lease itself required the erection by the end of 1921 of buildings costing at least two hundred thousand dollars. It also provided that the building on the west half of the block, where the building occupied in part by Mrs. Kinney was located, should be of "Class A" construction, without similar provision as to the east half, and that no buildings should be torn down except those on the north half of the east half until at least fifty thousand dollars had been expended in new buildings on the last-mentioned portion. It must be taken that what the parties had in mind when they made the lease conformed with these provisions, and the materiality of the misrepresentation must be judged by reference to them. Even these buildings the defendant had at no time the means to construct, although he could have obtained the money for a fifty thousand dollar building on the portion of the block to be first improved and which was not affected by the Kinney lease.

But the building whose construction the defendant was endeavoring to finance was of a much more ambitious character. It was to be a hotel known as the Royal Alexandria which would cost nine hundred thousand dollars or more. It was the negotiations for financing the erection of this building which it is complained failed because of the Kinney lease. These negotiations were along the line of organizing a hotel company which was to take the ground lease, the issuing by it of two million dollars in bonds, which, through the intervention of another company, were to be underwritten by still a third and disposed of by it abroad. The scheme, however, involved the plaintiffs modifying the terms of the ground lease. As it read it provided for specified annual rentals for the first ten years of the lease, and that thereafter the rental was to be five per cent net on the value of the ground, as ascertained by appraisement immediately prior to the commencement of each ten-year period. The persons with whom the defendant was negotiating desired that the lease provide a fixed rental for the first thirty years of the term, and drafts of an

agreement and new lease so providing were actually prepared but were never signed. In other words, the success of the negotiations which it is claimed failed because of the existence of the Kinney lease, and because of whose failure it is now sought to rescind the ground lease, involved the obtaining by the defendant of the consent of the plaintiffs themselves to a modification of the ground lease, something which they were not obligated to give and did not give. On the other hand, the fact, according to the defendant's testimony, which must be taken to be true, is that the plaintiffs were ready to consent and that the negotiations did not fail because of any unwillingness on their part in this respect.

The defendant's negotiations to finance the new building came to an end about September, 1913, while Mrs. Kinney was still in possession under her first lease of which the defendant was informed when he made the ground lease, and which still had several months to run. The negotiations were never resumed. From time to time thereafter the defendant had conversations with the plaintiff who had made the false representation complained of. The two men saw each other frequently, but there was no suggestion of a rescission or cancellation of the lease or that the defendant was not obligated thereunder. He informed the plaintiffs that the negotiations had failed because of the Kinney lease, and the plaintiff replied that he would use his best efforts with the other plaintiffs to obtain a reduction of rent on account of it. Matters ran along in this way for practically two years, until August, 1915. In the meantime the salability and rental value of the property had substantially diminished. The defendant failed to pay the rent due that month, and after several conversations with the plaintiff about the matter had an interview with him in company with his lawyer. The defendant stated that he was anxious to carry on the lease but could not do so at the agreed rental, and asked for a reduction, which the plaintiff rejected as unreasonable in amount. The defendant then offered to cancel the lease and the plaintiff replied that he would do what he could to obtain a reasonable reduction in rent from the other plaintiffs, but they would not take the property back. It was then agreed that the plaintiff would communicate with his fellow-lessors about a

reduction in rent. Whether he did so or not does not appear, but, in any event, the present action was shortly thereafter commenced against the defendant without further communication with him.

During all this time the defendant was in possession of the property, collecting the rents from the various tenants, himself extending old leases and making new ones and in every way exercising full dominion under the ground lease. It is alleged in the cross-complaint, testified to by the defendant, and found by the court that while he personally discovered the fraud claimed to have been perpetrated upon him by April 1, 1913, and thereafter proceeded under the lease and retained dominion of the property, he did not learn of his right to rescind the lease until September, 1915, shortly after the commencement of the plaintiffs' action against him. Then he consulted a lawyer and was advised of his supposed right, and thereupon filed his answer and cross-complaint, alleging the fraud, that he was ignorant of his right to rescind until about September 1, 1915, and offering to restore everything of value he had received from the plaintiffs under the lease. Even after this, however, he retained dominion of the property, collected the rents, and actually made a lease of a portion of it.

We say the defendant collected the rents advisedly, although the fact is that just previous to the commencement of the action he had assigned the accruing rentals for three years to his wife, and she thereafter collected them. [3] But if the fact be that this assignment was a genuine transfer of interest so that the rents collected by the defendant's wife were not in effect collected for him, it is evident that the defendant had put it out of his power to surrender the lease and its benefits without the concurrence of his wife, which was not shown. If this were the situation he alone could not rescind. The most favorable view for the defendant is, therefore, that it was he who was the ultimate collector of the rents.

Upon the foregoing facts we can see but little question but that for several reasons the defendant did not have the right to rescind. [4] In the first place, it is not shown that the defendant was materially injured by the false representation complained of, and it is conceded that in such a case as the present this must appear. As we have

said, no complaint is made as to the amount of the rental reserved by the Kinney lease. The sole complaint is that because of the length of its term the negotiations of the defendant for financing the erection of the hotel building failed. But those negotiations involved the plaintiffs' consent to a new and different lease. As a condition of giving it the plaintiffs would have had the right to require an acquiescence by the defendant in the Kinney lease. In fact, the new lease which the plaintiffs were apparently ready to sign did so provide, for it provided that it was subject to existing leases of which the Kinney lease was at that time known to be one. The situation is that the arrangement, the failure to consummate which is relied upon by the defendant as the injury done him by the plaintiffs through their false representation, was an arrangement which he was not entitled to make, and could not make, except by the consent of the plaintiffs themselves, which they were not obligated to give. The defendant could complain of the wrong of the plaintiffs in case it worked injury to him in respect to some right which he had, not in respect to something to which he had no right unless the plaintiffs themselves agreed to it. The defendant could perhaps have complained if the false representation had interfered with negotiations, which would otherwise have been successful, for the construction of a building or buildings under his lease as he had it. But he cannot complain of the interference with negotiations for erecting a building under a lease which he did not have, and that is the only complaint made. The fact that the plaintiffs were willing to agree to such a lease is wholly immaterial. If they did agree, the defendant of necessity acquiesced in the Kinney lease. If they did not agree, the negotiations of the defendant were futile. In any case, the object of the negotiations, the failure to achieve which is alone complained of, was something which the defendant could not do under the lease which he had, and his right to rescind must depend upon his suffering loss under that lease.

[5] In the second place, there is no sufficient excuse presented for the defendant waiting two years and a half after discovering the fraud before endeavoring to rescind. It is true that the code provides (Civ. Code, sec. 1691) that to accomplish a rescission the party entitled thereto "must

rescind promptly upon discovering the facts which entitle him to rescind, *if he . . . is aware of his right to rescind."* It is true likewise that the complaint alleges and the court finds that the defendant was not aware of his right to rescind until just prior to the filing of his cross-complaint. But no reason whatever is stated in the cross-complaint, and no sufficient reason appears in the evidence or findings why he did not long before become aware of his right, assuming that he had one. [6] It is well settled that where a party has knowledge of facts of a character which would reasonably put him upon inquiry, and such inquiry, if pursued, would have led to a discovery of the fraud or other ground for rescission, he will be charged with having discovered the fraud or other ground as of the time he should have discovered it, that is, as of the time when he would have discovered it if he had with reasonable diligence pursued the inquiry when he should have done so. (*Lady Washington etc. Co.* v. *Wood,* 113 Cal. 482, [45 Pac. 809]; *Harrington* v. *Patterson,* 124 Cal. 542, 57 Pac. 476].)

The reason for this rule is that diligence throughout is required of one who would rescind. It is a reason which applies with equal if not greater force to the time at which such a person, after learning of the facts upon which his right is based, will be held to be aware of their legal consequence, his right to rescind. [7] It is at least intimated in *Ruhl* v. *Mott,* 120 Cal. 668, 679, [53 Pac. 304], and *Hannah* v. *Steinman,* 159 Cal. 142, 153, [112 Pac. 1094], that the rule is the same in regard to the time as of which a person seeking rescission will be charged with knowledge of his right, as it is in regard to the time as of which he will be charged with a discovery of the facts which give him the right, and the reason for this is so plain that we have no hesitation in declaring it to be the case.

Applying this rule to the present case it appears that the defendant admittedly learned of the fraud which he claims was perpetrated upon him by April 1, 1913, and knew of the injury which he claims resulted therefrom by September, 1913. It is claimed, however, that he did not actually become aware of his legal right to rescind because of the fraud until September 1, 1915. [8] In the absence of any explanation, the permitting' of this lapse of time before learning of his legal rights is wholly unreasonable. Fraud

is no slight matter. Where, as here, a party claims to have been defrauded, and to have been injured thereby very substantially, any reasonable diligence at all would require of him that he proceed promptly to ascertain what his rights were. When he waits two years after learning both of the fraud and of his injury before making any attempt to do this there are but two conclusions which can be drawn from his delay in the absence of explanation. Either he was guilty of a complete lack of diligence, or the fraud and injury complained of were not important in his mind and were not in fact substantial.

No explanation whatever of the defendant's delay is attempted in the cross-complaint, and it was demurrable for that reason. Nor does the evidence show any explanation, or at least any sufficient explanation. It may be that upon his first discovery of the fraud in the spring of 1913, the defendant was justified in not seeking to learn what his rights were, because of the statement of the plaintiff with whom he dealt that he would endeavor to get Mrs. Kinney out by the end of the year. But in the fall of 1913 this plaintiff told the defendant that the Kinney lease was good, and that he could not get Mrs. Kinney out. At just about the same time the defendant's negotiations for financing failed, so that he then knew both of the fraud and the supposed injury done him by it. Then certainly, if he were to act with reasonable diligence, he should have proceeded to ascertain what his rights were because of the wrong and injury done him. Instead, he made from time to time requests for reduction of rent which the plaintiff with whom he dealt would agree to take up with the other lessors, but which were never agreed to. The defendant's own testimony would seem to make it pretty plain that a reduction was asked for, not so much as a matter of right, as a matter of something which the plaintiffs should allow in fairness. But, however this may be, the only explanation for the delay of two years is these requests from time to time for a reduction in rent, and the statement of one of the plaintiffs that he would endeavor to obtain one for the defendant. It certainly cannot be said that such conduct for such a length of time evidences the diligence which might reasonably be expected of a man defrauded and substantially injured.

The defendant in this connection relies upon the authority of *Hannah* v. *Steinman*, 159 Cal. 142, [112 Pac. 1094]. There the plaintiff and defendant had made a lease in mutual ignorance of a fact which rendered the lease practically valueless to the plaintiff, the lessee. The plaintiff discovered the mistake shortly afterward in July, ·1906. He at once protested to the agents of the defendant against going on with the lease, but was told the defendant was east and would shortly return, and he permitted the matter to remain in abeyance until the defendant's return. The defendant did not return until January, when the plaintiff immediately took the matter up with him, negotiating for a new lease which would obviate the result of the mistake. The negotiations lasted for about a month, the plaintiff asking that a new lease be given him or he be released. Upon the negotiations coming to an end the plaintiff immediately consulted a lawyer, was advised of his right to rescind, and at once gave notice of rescission. It was held that upon these facts a want of diligence on the part of the plaintiff did not appear.

That these facts, however, differ essentially from those of the case at bar is plain. In both cases the injured party was justified in first endeavoring by negotiation to see if the matter could not be satisfactorily arranged before inquiring as to his legal rights. But in the one case he took up and pushed the negotiations with diligence insisting upon the matter being arranged. In the other case, the present one, he was satisfied to allow the matter to drift for two years upon conversations from time to time with one of the lessors, largely of a casual character, in which he would ask for a reduction of rent, and the lessor would reply that he would endeavor to get the other lessors to grant a reduction, and which never came to anything. Certainly, reasonable diligence required of him, the defendant here, that when·after a reasonable time his negotiations with the plaintiffs, if his conversations can be considered as really amounting to negotiations, resulted in nothing, he should have acted if he had been really defrauded and substantially injured. This he did not do. If he had acted, the first step he would naturally have taken would have been to ascertain what his legal rights were and what redress he could obtain. We see no escape from the conclusion that

the defendant's failure to learn of his right to rescind long before he did was due to his own want of diligence. This being the case his right to rescind was lost.

In the third place, the defendant's right to rescind, if he had any, was lost by his dealings with the property. [9] The rule is too familiar to require the citation of authority that if a person entitled to rescind goes on, after he discovers the facts which give him the right and knows that he has the right, to deal with the property involved as if the contract or transaction were still in effect, he affirms the contract or transaction and his right to rescind it is gone. That is exactly what the defendant here did. We need not go back to the time at which he should have known of his right to rescind but did not. It is necessary to consider only what he did after he filed his cross-complaint when he was fully aware of his rights and was affirmatively seeking rescission. After this time he continued through the medium of his wife to collect the rents of the property, and in December, 1915 (the cross-complaint was filed in October, 1915), actually made a lease of a portion of the property for the term of one year commencing the 1st of the following January, and granted an extension for the same period of another lease about to expire. He had no right to make either the new lease or the extension of the existing one, except under and by virtue of the ground lease which he was seeking to rescind. His action in doing so was alone an unequivocal affirmance of the latter, and as such destroyed whatever right of rescission he might previously have had.

It is true the trial court finds that all leases and extensions of leases made by the defendant were upon condition that the plaintiffs carry out what is found to be the promise of the plaintiffs that they would secure the removal of Mrs. Kinney or reduce the rent under the defendant's lease. In this connection it should be stated that no such condition was inserted in any of the leases or extensions made by the defendant. What is meant by this finding is that the defendant was acting upon a condition existing in his own mind. But even so, so far as any promise to remove Mrs. Kinney is concerned, the finding is without support except as to the first conversation or conversations in the spring of 1913 between the defendant and the plain-

tiff with whom he dealt. In the fall of that year, this plaintiff definitely informed the defendant that he could not get Mrs. Kinney out, and thereafter their conversations were upon that basis and were confined to a discussion of a reduction of rental. Furthermore, the finding must be confined to the period prior to the filing of the cross-complaint. It can have no application to anything occurring subsequently, since at that time the plaintiffs in the most positive way possible, by the commencement of their action, had already informed the defendant that they would insist on the rental called for by the lease without reduction. The defendant's action thereafter in making the lease and extension mentioned could be nothing but what we have termed it, an unequivocal affirmance of the ground lease.

Judgment reversed.

Shaw, J., and Lawlor, J., concurred.