**SHONTS et al. v. HIRLIMAN et al.**
**CALDWELL v. SAME.**
**WOGAHN v. SAME.**

Nos. 8358–Y, 8301–Y, 21–Y.

District Court, S. D. California,
Central Division.

July 17, 1939.

Frederick W. Mahl, Jr., of San Francisco, Cal., for plaintiff Sydney L. Shonts.

David I. Lippert, of Los Angeles, Cal., for plaintiffs W. W. Caldwell and Lester E. Wogahn.

Swarts & Tannenbaum, of Los Angeles, Cal. (Louis E. Swarts, of Los Angeles, Cal., of counsel), for defendant George A. Hirliman.

Lloyd Taraday, of Los Angeles, Cal., for defendant Webster, Atz & Co.

Leo Shapiro, of Los Angeles, Cal., for defendant Michael Hoffman.

YANKWICH, District Judge (after stating facts as above).

The problems presented by these motions must be solved by an analysis of the statute or by reference to similar statutes or claims of similar character, because, owing to the newness of the Securities Act of 1933, there are no cases determining them.

The Congress of the United States, for the first time in its history, undertook in 1933, to pass a statute similar to the state Corporate Securities statutes, commonly known as "blue sky laws". They take their name from their object, which is to prevent promoters of corporate securities from selling "the blue sky" to investors, or at least, from promising it to them. Most of these statutes are regulatory only. They regulate the securities which may or may not be issued or sold in a state and set up agencies for the granting of permits to issue or sell securities. They do not, as a rule, create any special claim of a civil nature for falsity in the application for a permit. The person who feels defrauded, by any misrepresentation relating to the stock, must resort to the law action of deceit or to the equity suit of rescission.

This Act, however, creates a civil liability of a specific character. It provides that if any part of the registration statement contains an untrue statement of material facts or omits to state material facts, the person who acquires the security, without knowledge of the untruth or omission, may sue either at law or in equity, the person who signed the registration statement, the officers or directors of the corporation which applied for the registration, and the accountants or others who certified to the registration statement or prepared it. 15 U.S.C.A. § 77k.

The measure of damages is not the one which usually obtains in fraud,—the difference between the value of the thing bought and what it would have been if it had been as represented.

I refer, for illustration of the latter rule, to Hines v. Brode, 1914, 168 Cal. 507, 143 P. 729, and to a later case, in which I was of counsel for the defendant, Palladine v. Imperial Valley Farms Lands Association, 1924, 65 Cal.App. 727, 225 P. 291. I quote from Hines v. Brode, supra [168 Cal. 507, 143 P. 730]: "The price paid may be considered only as evidence of value. Therefore, in a proper case, a

wronged plaintiff may assert, as here, and, if possible, show, that the actual value of the property was only $100, and that its value, if the property had been as represented, was $4,000. He may also show and recover for the depreciation in the value of the improvements which he may have placed upon the property—a depreciation resulting from the fact that the actual value was not the represented value; and he may also recover for any other legitimate expenditures he may have made." This rule was abolished in California by the Amendment of 1935 to Section 3343 of the Civil Code (St.1935, p. 1612).

If we study the Securities Act of 1933, and especially Section 11, which creates a right of action which would not otherwise exist, we find that the Congress did not adopt this rule, but *made the measure of recovery that which had always obtained* in actions for fraud in the courts of the United States. Thus, the Supreme Court in Smith v. Bolles, 1889, 132 U.S. 125, 129, 130, 10 S.Ct. 39, 40, 33 L.Ed. 279:

"The measure of damages was not the difference between the contract price and the reasonable market value if the property had been as represented to be, even if the stock had been worth the price paid for it; nor, if the stock were worthless, could the plaintiff have recovered the value it would have had if the property had been equal to the representations. What the plaintiff might have gained is not the question, but what he had lost by being deceived into the purchase. The suit was not brought for breach of contract. The gist of the action was that the plaintiff was fraudulently induced by the defendant to purchase stock upon the faith of certain false and fraudulent representations, and so as to the other persons on whose claims the plaintiff sought to recover. If the jury believed from the evidence that the defendant was guilty of the fraudulent and false representations alleged, and that the purchase of stock had been made in reliance thereon, then the defendant was liable to respond in such damages as naturally and proximately resulted from the fraud. He was bound to make good the loss sustained, —such as the moneys the plaintiff had paid out and interest, and any other outlay legitimately attributable to defendant's fraudulent conduct; but this liability did not include the expected fruits of an unrealized speculation. The reasonable market value, if the property had been as represented, afforded; therefore, no proper element of recovery.

"Nor had the contract price the bearing given to it by the court. What the plaintiff paid for the stock was properly put in evidence, not as the basis of the application of the rule in relation to the difference between the contract price and the market or actual value, but as establishing the loss he had sustained in that particular. *If the stock had a value in fact, that would necessarily be applied in reduction of the damages.* 'The damage to be recovered must always be *the natural and proximate consequence of the act complained of,*' says Mr. Greenleaf (volume 2, § 256); and 'the test is,' adds Chief Justice Beasley in Crater v. Binninger, 33 N.J.L. [4 Vroom] 513 [518, 97 Am.Dec. 737], 'that those results are proximate which the wrong-doer, from his position, must have contemplated as the probable consequence of his fraud or breach of contract.' In that case the plaintiff had been induced by the deceit of the defendant to enter into an oil speculation, and the defendant was held responsible for the moneys put into the scheme by the plaintiff in the ordinary course of the business, which moneys were lost, less the value of the interest which the plaintiff retained in the property held by those associated in the speculation." (Italics added.)

And see, Sigafus v. Porter, 1900, 179 U.S. 116, 21 S.Ct. 34, 45 L.Ed. 113; Tooker v. Alston, 1907, 8 Cir., 159 F. 599, 16 L.R.A.,N.S., 818; Towle v. Maxwell Motor Sales Corp., 8 Cir., 1928, 26 F.2d 209.

The Act, in section 11, subdivision (e), provides that the recovery shall be of such damages as shall represent the difference between the amount paid for the security and "(1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought". 15 U.S.C.A. § 77k (e).

■ It is evident that the Congress intended to make the action, notwithstanding its origin in fraud, *purely compensatory.* And so, it provided for the recovery of the

price paid. It anticipated three possible contingencies: (1) Where there has been no sale of the stock; (2) where there has been a sale of the stock before the action was brought or (3) a sale after the action was brought.

Where there has been no sale of the stock, the recovery is for the difference between the value of the stock when purchased, and its value as of the time suit is brought. Where there has been a sale, the recovery is for the difference between the price received by the seller and the price he paid.

Before disposing of this question and the question of limitation, I comment briefly on the evidence in the record as it relates to the elements of the action created by the statute.

I am satisfied that the omission from the statement of the minimum requirements in the leases, which obligated Condor Pictures, Inc., to shoot at least 100 days a year, is material. It is not of any great significance that the lease was not actually entered into until later. For that reason, I am of the view that there is no falsity in the statement that they had certain rental arrangements with a particular company. I think the oral negotiations and the telegram of January 1, 1937, showed a commitment which the parties themselves considered binding, and which was to be later embodied in a more formal instrument. The effect of these conclusions is this: No misstatement or omission appears in the registration statement until after the last certificate of Webster, Atz & Co., dated January 19, 1937. Prior to January 31, 1937, there were merely discussions of rental, and no definite undertaking by either side or guarantee of a minimum, which was binding on the company. The failure of the certificate of Webster, Atz & Co. to set up the rental undertaking and the minimum guarantee of $35,000 as a contingent liability, is not the omission of anything which existed then. The rental arrangement was not called to their attention. There was no entry on the books at their disposal, from which, by further inquiry, they might have discovered that there was such an undertaking. Absent these, they cannot be charged with a misrepresentation which was made later—long after their certification.

In sum, we cannot, as to Webster, Atz & Co., take the subsequent omissions and retroject them to the date of January 19, 1937, so as to "tie" them to a certificate, which they made on the basis of facts as they then existed and which showed no rental arrangement of any kind.

We return to the element of damages. It is stipulated that, at the time the actions were begun, the stock had no "market value". But *it is not conceded* that it had *no intrinsic value*. In the view I take, this value is of utmost importance. The object of the statute is not to penalize promoters or auditors for the full value of the stock, merely because the stock—which may be that of a new corporation—might not have a "market value". The object of the Congress was to compensate a person for the depreciation in the value—*the actual value* of his security.

Mark you, the object of this section is compensatory. No penalties are intended. The object is not to recover the *full value* of the stock, *under all circumstances*. The plaintiffs are not required, as a condition precedent to recovery, to surrender for cancellation to the defendants or to the court, the stock, or even to tender it back. They retain it. If, as counsel claim, they may retain the stock and then recover its full value by showing that there is no market for it at a particular time, then we have this situation: A person might recover the full value of the stock, retain his position as a stockholder in the corporation, exercise his full rights as such, and then, at some future time, when the stock had acquired a "market value", reap the full benefit of his investment, after he has already been repaid it. This would be a penalty, inconsistent with the compensatory nature of the Act.

The finding of insolvency in the reorganization proceedings is not proof that the stock was valueless. A petition for reorganization was filed on November 29, 1937. Under section 77B of the old Bankruptcy Act, 11 U.S.C.A. § 207, and Chapter 10 of the Chandler Act, a petition for reorganization may be filed either if a corporation is insolvent, or if it is unable to pay its debts as they mature. 11 U.S.C.A., Ch. 10, § 530 (1). Insolvency here is interpreted as it is defined in clause (19) of Section 1 of the new Bankruptcy Act, namely: A condition existing when the aggregate of a debtor's property, exclusive of any property which he may have concealed, transferred or removed with intent to defraud, is not, at a fair valua-

tion, sufficient in amount to pay his debts. 11 U.S.C.A., Ch. 1, § 1(19).

A corporation may seek the benefit of corporate reorganization, *without being insolvent.* The only object of determining insolvency is to dispense with the need for the assent of a majority of the stockholders to the plan of reorganization. That was the rule under 77B and is the rule under the present Act, subdivision 8 of Section 216, which provides that protection for stockholders shall not be required after the Judge determines that the debtor is insolvent. 11 U.S.C.A. § 616(8).

A reorganization differs from an ordinary proceeding in bankruptcy, whether upon a voluntary or involuntary petition. In an involuntary petition in bankruptcy, it is usually alleged that the defendant is insolvent and has committed certain acts of bankruptcy. 11 U.S.C.A., Ch. 3, § 21. If, later on, the issue is tried, the finding of insolvency reverts to the date of the filing of the petition. 11 U.S.C.A., Ch. 1, § 1(13) For that is the issue presented by the pleadings. I think that this is the principle which counsel had in mind in urging that the finding of insolvency in the reorganization proceedings of Condor Pictures, Inc., on the 30th of December, 1938, reverted back to the filing of the petition. When a petition for reorganization is filed, by either the debtor or some of its creditors, the object is to subject at once the property to the equity powers of the court. And the court is not called upon, in approving the petition, to determine whether the debtor is solvent or insolvent. When, in the course of the proceedings, it becomes necessary to determine the voting rights of the stockholders, the court may make a finding of insolvency. This finding is merely for the purpose of reorganization. For if reorganization fails, either through the failure of the plan formulated and approved by the court, to receive the assent of the requisite number of creditors or because the court is satisfied that no reorganization is possible, the court has the choice of liquidating or of dismissing. If the court liquidates, then its finding of insolvency becomes effective, and liquidation is ordered through a trustee. 11 U.S.C.A. §§ 636–638.

I refer to these matters in order to point out how provisional all acts done in the course of a reorganization proceeding may be until there is actually a reorganization or liquidation.

Now, to get back to the specific order. The minute order of Judge Ralph E. Jenney says specifically: "This matter coming on for hearing on (8) motion of Ben Pivar, et al, creditors to dismiss the proceedings numbered 31,013-C, Bankruptcy, the court finds the corporation insolvent in both the bankruptcy and the equity sense *at this time.*"

Judge Jenney did not order liquidation. Had he ordered liquidation, it might be argued that we are in bankruptcy and ought to consider it as though an adjudication had been made upon an involuntary petition, and that it refers back to the date of the petition. But, he did not do so. He continued the efforts at reorganization. His only object in making the finding was to say to the reorganizers: "You may proceed to formulate a plan, and if that plan is approved by me, it will be confirmed when you secure the assent of two-thirds of the creditors. You do not need the assent of a majority of the stockholders."

We cannot retroject into the past this finding, which says that insolvency exists *"at this time,"* so as (in the language of the street) "to pin" insolvency on the corporation as of November 29, 1937.

■ The documentary evidence offered to show insolvency is insufficient. We have an auditor's summary of the books of the company, which shows an operating loss, during a certain period of time. But an operating loss is not the equivalent of insolvency, either in the sense of inability to meet debts—which, of course, would not help us here—or in the sense that the assets, at a fair valuation, are less than the liabilities.

I am of the view, therefore, that the evidence does not show insolvency, so as to warrant the court in concluding that, on the date when these suits were instituted, between March and October, 1937, the stock was of no value, so as to entitle the plaintiffs to recover without proof of value.

I realize that there may be difficulties in proving value. But this type of legislation is novel. We know the opposition encountered when such legislation is sought to be enacted. And, no doubt, because of this opposition, on the part of persons whose affairs had not been, heretofore, regulated by federal law,—an opposition which, indubitably, expressed itself in the Congress —a compromise had to be reached and the law made less harsh.

Counsel themselves have adverted to the fact that recovery was greater under the original enactment. This indicates that, ultimately, the counsel of those prevailed who thought that liability should *not be* penal in nature, but merely compensatory, limited to the actual loss suffered. And as there can be no claim unless there is loss, the requirement that the plaintiff prove loss by showing depreciation in the value of his security, merely makes him prove what any person who has an action purely compensatory, must prove in a court of law. There is no such proof of loss here.

We now pass to another matter—the effect of the one-year limitation contained in Section 13, which reads: "No action shall be maintained to enforce any liability created under section 11 [77k] or section 12 [77*l*] (2) unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 12 [77*l*] (1), unless brought within one year after the.violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 11 [77k] or Section 12 [77*l*] (1) more than three years after the security was bona fide offered to the public, or under section 12 [77*l*] (2) more than three years after the sale." 15 U.S.C.A. § 77(m).

■ Statutes of limitation are statutes of repose. They are based upon the thought that the law should aid the diligent, and not him who sleeps on his rights. United States v. Oregon Lumber Co., 1922, 260 U.S. 290, 299, 300, 43 S.Ct. 100, 67 L.Ed. 261. They do not wipe out the debt. They merely destroy the remedy. So much so that the due process clause is not violated if a limitation is changed. See Canadian Northern R. Co. v. Eggen, 1920, 252 U.S. 553, 559, 40 S.Ct. 402, 64 L.Ed. 713.

■ In interpreting limitations, the general rule is that the statute begins to run from the time the right of action accrues. And the right of action accrues when an act, amounting to either a breach of contract or a breach or violation of duty takes place, regardless of concealment or discovery. The extent to which courts have gone in applying this principle to statutes of limitation is illustrated by Staples v. Zoph, 1935, 9 Cal.App.2d 369, 49 P.2d 1131, which arose before me while a Judge of the Superior Court of California. A woman sent an anonymous letter to another person reflecting on the character of the plaintiff —also a woman. The plaintiff did not discover the identity of the sender until after the expiration of one year, which is the California statutory limitation in actions for libel. The plaintiff alleged that fact in an endeavor to take the case out of the statute. I held that there were no exceptions to the rule which starts the running of statutes of limitations from the accrual of the right of action, except in the case of fraud, and that the fraudulent concealment of the identity of the defendant did not extend the period of limitation.

On appeal, the District Court of Appeals, Second District, affirmed the judgment, stating: "Concealment of the identity of the party liable cannot be deemed the same as concealment of a cause of action. * * * This rule does not operate unjustly to plaintiff, since at any time within one year after accrual of her cause of action she could have filed suit naming a fictitious defendant." As stated, the only exception to this rule is that obtaining in fraud cases. In California, an action for relief, upon the ground of fraud or mistake, must be brought within three years. But the cause of action is not deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake. California Code of Civil Procedure, § 338.

■ While the wording of this section is different from the limitation in Section 13 of the Securities Act of 1933, the meaning of both sections is the same. They both mean that the action *must be brought within one year after discovery*. More, the statute under discussion goes further. Instead of merely speaking of discovery, it gives recognition to imputed discovery, i. e., discovery which should have been made by the exercise of reasonable diligence.

I think that, ultimately, the courts would have interpreted the statute in like manner. For that has been the general rule. See, Foster v. Mansfield, Coldwater, etc. Ry., 1892, 146 U.S. 88, 13 S.Ct. 28, 36 L.Ed. 899; Johnston v. Standard Mining Co., 1893, 148 U.S. 360, 370, 13 S.Ct. 585, 37 L.Ed. 480; Victor Oil Co. v. Drum, 1920, 184 Cal. 226, 193 P. 243; Bancroft v. Woodward, 1920, 183 Cal. 99, 190 P. 445; Consolidated, etc., Co. v. Scarborough, infra. When we deal with the stat-

ute of limitations as applied to fraud, discovery becomes a part of the cause of action.

In Lady Washington Consolidated Co. v. Wood, 1896, 113 Cal. 482, 45 P. 809, 810, the court says: "The right of a plaintiff to invoke the aid of a court of equity for relief against fraud, after the expiration of three years from the time when the fraud was committed, is an exception to the general statute on that subject, and cannot be asserted unless the plaintiff brings himself within the terms of the exception. It must appear that he did not discover the facts constituting the fraud until within three years prior to commencing the action. This is an element of the plaintiff's right of action, and must be affirmatively pleaded by him in order to authorize the court to entertain his complaint."

This case has been followed consistently. In Original Mining & Milling Company v. Casad, 1930, 210 Cal. 71, 290 P. 456, the court gives the allegations which the complaint *must* contain in order to show discovery. They are: (1) When the fraud was discovered; (2) the circumstances under which it was discovered; (3) facts to show that plaintiff is not at fault in failing to discover the fraud sooner, and that the plaintiff has no actual or presumptive knowledge of facts sufficient to put him on inquiry. Among the latest California cases on the subject is Consolidated Reservoir & Power Co. v. Scarborough, 1932, 216 Cal. 698, 16 P.2d 268, where the older cases are reviewed and approved. These cases express a general rule, which has the sanction of the Supreme Court of the United States.

In Wood v. Carpenter, 1879, 101 U.S. 135, 140, 25 L.Ed. 807, the court, in interpreting the Indiana statute relating to limitations of actions in fraud, laid down a similar rule: "In this class of cases the plaintiff is held to stringent rules of pleading and evidence, *'and especially must there be distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see whether, by ordinary diligence, the discovery might not have been before made.'* [Citing case.] 'This is necessary to enable the defendant to meet the fraud and the time of its discovery.' * * * *A general allegation of ignorance at one time and of knowledge at another are of no effect. If the plaintiff made any par-*ticular discovery, it should be stated when it was made, what it was, how it was made, and why it was not made sooner." (Italics added)

The opinion concludes:

"There must be reasonable diligence; and the means of knowledge are the same thing in effect as knowledge itself.

*"The circumstances of the discovery must be fully stated and proved, and the delay which has occurred must be shown to be consistent with the requisite diligence."* (Italics added.)

And see, Arkansas Natural Gas Co. v. Sartor, 1935, 5 Cir., 78 F.2d 924; United States v. Christopher, 1934, 10 Cir., 71 F.2d 764.

As the basis of the right to recover under the Securities Act is fraud, and the limitation is made dependent upon discovery, these principles should be applied to it.

The rule which allows discovery to be the starting point of limitation is made for the benefit of the person who claims to be injured by the fraud of another. It works to the disadvantage of the person charged with the fraud. If we apply it to stockholders seeking redress under the civil liability sections of the Security Act, no hardship or injustice results. Stockholders are in a position to inquire, and to detect fraud on the part of the officers of a corporation, *in matters of record,* as they have access to its books and records.

The maximum time provision in Section 13, to the effect that, in no event, shall an action be brought more than three years after the security was offered to the public, does not extend the limitation period. This provision means that if discovery is not made within three years, no action lies, *under any circumstances.* Otherwise put, if more than three years have elapsed since the offer of the security, the discovery of defendant's fraud comes too late. The object of this clause is merely to set the maximum period during which a person might be held liable, *under any circumstances,* by reason of any false statements in the registration statement. It does not dispense with the requirement that any person who brings an action within the three year period, must do so also within one year after the discovery of the falsity of the statement or the omission.

There is no proof as to the date of discovery, although the complaints contain

allegations of discovery in May, 1938. Nor were facts stated in the complaint or proved at the trial explaining why discovery was not made sooner. Unless I hold that such proof is unnecessary, the actions are clearly barred. For the reasons stated, I cannot so hold.

It follows that the motions to dismiss should be granted as to all the defendants. It is so ordered. The causes are also dismissed as to defendants named but not served.