KOZINSKI, Circuit Judge,
dissenting:
I agree with the majority that DM was entitled to go to the jury with its claim that it couldn’t have discovered the hidden defect prior to buying the property. Maj. at 877. Moreover, as the majority correctly notes, FTB was bound to disclose the hidden defect of which it was aware at the time of the sale “because a foreclosing lender has the same duties of disclosure regarding the property as any other seller.” Id. at 877 (citing Karoutas v. Ho-meFed Bank, 232 Cal.App.3d 767, 771, 283 Cal.Rptr. 809 (1991)). Nor is there any doubt that DM brought the lawsuit well within both the three-year statute of limitations for its fraud claims, see CaLCiv. Proc.Code § 338(d), and the four-year statute of limitations for its rescission claim, see id. § 337(3). DM thus was entitled' to sue FTB, unless it relinquished those rights. The majority concludes it did, but does so by misreading California law and ignoring key facts.
1. The majority relies on section 1691 of the California Civil Code, which it construes as depriving DM of its claim for rescission because it failed to investigate and notify FTB of that claim in a timely fashion. Maj. at 877. But section 1691 only requires prompt notice after a party is “aware of his right to rescind,” Cal. Civil Code § 1691; it imposes no duty to investigate on the wronged party.
The majority goes astray by relying on a case from the era of flivvers and flappers that interpreted an earlier version of section 1691. Maj. at 877 (citing Bancroft v. Woodward, 183 Cal. 99, 108, 190 P. 445 (1920)). At that time, section 1691 required the party seeking rescission to “use ... reasonable diligence,” Cal. Civil Code § 1691 (1915), but in 1961, California lawmakers removed the “reasonable diligence” requirement. The current version of the statute contains no diligence requirement and says nothing at all about the period before the rescinding party discovers its ground for rescinding. See Cal. Civil Code § 1691 (2015). Thus, “reasonable diligence or promptness on the part of the party seeking rescission is no longer a prerequisite for the remedy.” Wilke v. Coinway, Inc., 257 Cal.App.2d 126, 140, 64 *879 Cal.Rptr. 845 (1967). The majority is applying California law that was repealed when Pat Brown was governor.
The majority also cites Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1112, 245 Cal.Rptr. 658, 751 P.2d 923 (1988), and Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 808-09, 27 Cal.Rptr .3d 661, 110 P.3d 914 (2005), but those are statute of limitations cases. See Maj. at 877. The statute of limitations hadn’t run when DM brought suit, so those cases are irrelevant to the question presented to us.
2. Even assuming that lack of diligence could be fatal to DM, where’s the lack of diligence here? DM bought the property from FTB at a foreclosure sale and soon discovered the defect. Had this been an ordinary sale, DM would have had reason to suspect the seller was aware of the defect. A property owner generally occupies and improves the property, and is likely to be familiar with its physical condition. But this was a foreclosure sale. The seller bank didn’t occupy the property or have any other physical dealings with it; the property was an asset on the bank’s books securing a defaulted loan. And, as the majority recognizes, maj. at 877, the defect was not one that a reasonable investigation would have turned up; it was only when DM tried to develop the property that it discovered the problem.
The prior owner, Huerta, would likely have known about the defect, but she would have had no reason to disclose it to the bank. I don’t understand why DM had a duty to track down Huerta and ask her whether she told the bank about the hidden defect. Absent some evidence that such a communication between Huerta and the bank had taken place — of which there was none here — a reasonable buyer wouldn’t have bothered looking for Huerta and asking her what she’d told the bank.
But there’s an even wider gap in the majority’s reasoning: Assuming DM did have a duty to find Huerta and interrogate her about whether she disclosed the defect to the bank, there’s no proof DM could have done so. We know that Huerta was reachable on December 29, 2011, because DM’s agents talked to her around that time. But the record shows nothing about her whereabouts between February 4, 2010, the date of the sale, and December 29, 2011, when she talked to DM. Was she easily found? Was she hospitalized in a coma? Was she in Zanzibar hunting snark? The record does not say.
The majority errs by assuming that Huerta was reachable by DM in 2010 because she talked to its agents in December 2011. Maj. at 878. We have no evidence that this was the case, and it is FTB’s duty, as the party moving for summary judgment, to fill any such gaps in the record. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
FTB ultimately leaves too much to speculation. First, it doesn’t explain why DM would have had reason to chase down Huerta and ask her whether she told the bank about the hidden defect. Nothing in the relationship of defaulting borrower and foreclosing bank naturally suggests that she would have done so. And, second, we are left to speculate about where Huerta was all this time and whether DM could have gotten a hold of her. All of these are facts — facts that are necessary for FTB to prevail on summary judgment, and facts that are absent from this record.
3. The majority disregards the fact that DM also sought damages on theories of negligent and intentional misrepresentation. Section 1691 certainly doesn’t apply to those claims and, as noted, they aren’t barred by the statute of limitations. The district court had no basis for concluding *880 that DM waived those claims because a party doesn’t waive its right to sue for fraud just by engaging in conduct allegedly inconsistent with an intent to sue after discovering the misrepresentation. See Smith v. Roach, 58 Cal.App.3d 893, 898-99, 126 Cal.Rptr. 29 (1975). Plaintiffs in Smith rented out units in a building they owned after finding out they relied on a misrepresentation in purchasing it. Id. at 899, 126 CaLRptr. 29. The Smith court refused to find waiver because “a plaintiff waives his right to seek damages for fraud only if, after he discovers the fraud, he makes a new agreement or engagement with the other party to the original contract” that results in an “adjustment of the plaintiffs rights under the original contract.” Id. at 898-99, 126 CaLRptr. 29 (internal quotation marks omitted). Here, DM did not discover the fraud until 2012, and at no point entered into any subsequent agreement with FTB.
DM raised a genuine issue of material fact regarding whether it was wronged by FTB. FTB was not entitled to prevail on its defenses, and certainly not on summary judgment. I can’t imagine the result would be the same if this case were decided by the California courts. At the very least, the matter is highly debatable, and we should certify it for consideration by the California Supreme Court. See Cal. R. Ct. 8.548(a).